Opinion issued June 3, 2004






 












In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00185-CR
____________
 
LAVARRO MONTEZ JENKINS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 910,377
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Lavarro Montez Jenkins, guilty of murder and assessed
his punishment at confinement for 80 years. Appellant’s court-appointed appellate
counsel has filed an Anders


 brief, representing to this Court that, in his opinion,
appellant has no arguable grounds for appeal. However, appellant has filed a
response, in which he contends, in his sole point of error, that his trial counsel
rendered ineffective assistance.
          We affirm.
Factual Background
          Kevin Carter testified that, on the evening of April 14, 2002, he went to the
apartment of Clifford Jones Jr., the complainant, to drink beer and to watch basketball
on television. At some point that evening, appellant, whom Carter knew only as
“Montez,” came over to the complainant’s apartment with a “white” man. Carter
explained that he recognized appellant from having seen him talking to the
complainant on at least one previous occasion. Appellant, the complainant, and the
unidentified “white” man visited briefly, and appellant and the man then left.
          Appellant returned to the apartment at approximately 3:00 a.m., this time
accompanied by a Hispanic or light-skinned black man, whose skin Carter described
as “bright.” When appellant returned to the complainant’s apartment, Carter was
talking to his girlfriend on the complainant’s telephone. While Carter was talking on
the telephone, he overheard the complainant, appellant, and the “bright” man
speaking in “a normal tone of voice.” As Carter ended his telephone conversation,
he heard appellant say, “Don’t move playboy,” and then heard a gunshot. Carter
turned around, saw the complainant falling, and was himself then shot in the chest. 
Carter fell to the floor, and the complainant fell on top of him. As Carter lay on the
floor, he saw appellant standing over him and shooting. Carter then closed his eyes
and heard several more gunshots. With his eyes still closed, Carter felt appellant
emptying Carter’s and the complainant’s pockets and then heard appellant and the
“bright” man leave the apartment.
          Carter got up and called out to the complainant, who did not respond. Carter
then left the apartment to get help because he did not know the address of the
complainant’s apartment. Carter knocked on the door of a nearby apartment, which
was occupied by Greg Peters, and Carter told Peters that appellant had shot Carter and
the complainant. Peters telephoned for emergency assistance, and Carter returned to
the complainant’s apartment and waited for an ambulance to arrive. Carter was
subsequently taken to a hospital and treated for his injuries. He later learned that he
had been shot four times and that the complainant had died.
          Peters testified that, at about 4:00 a.m. on the morning of April 15, 2002, he
heard someone knocking on the door of his apartment and that, when he opened the
door, he saw Carter lying in front of the door, bleeding. Carter told Peters that
appellant had shot Carter and the complainant, and Peters telephoned for an
ambulance to come to the apartments.
          Houston Police Officer H. Chisholm testified that, as part of the homicide
investigation, he inspected the interior of the complainant’s apartment and briefly
interviewed Carter while Carter was still in the hospital. During this interview, Carter
described the man who had accompanied appellant at the time of the shooting as
“white” or Hispanic. Chisholm explained that he did not conduct a lengthy interview
at the hospital because Carter appeared to be in pain from his injuries. After some
further investigation, Chisholm prepared a photographic array containing photographs
of appellant and five other men with similar physical characteristics and features and
presented it to Carter after he was discharged from the hospital. Carter “immediately”
pointed to the photograph of appellant and told Chisholm that he was “positive” that
appellant was the person who had shot him and the complainant. During a
subsequent interview with Chisholm, Carter described the man who had accompanied
appellant at the time of the shooting as having “bright” skin.
          Houston Police Officer B. D. Green, one of the first officers to arrive at the
scene of the shooting, testified that he saw, in the complainant’s apartment, two sets
of scales, one of which appeared to contain a “small presence of cocaine residue.” 
He also saw several “hollowed out” cigar casings, or “blunts,” which he explained are
sometimes refilled with marihuana.


 Green also noticed a heat-tempered glass dish,
which he noted could be used to make cocaine.
          Houston Police Officer A. G. Riddle, who photographed the interior of the
apartment following the shooting, testified that one of the photographs that he took
depicted the complainant’s body lying on the floor of the apartment. In the
photograph, which was admitted into evidence as State’s exhibit number 9, the
complainant appears to have been holding a small plastic bag of crack cocaine at the
time that he was fatally shot. Riddle also saw, in the kitchen, a plastic bag containing
“a white powder substance,” boxes of rifle and handgun ammunition, a shoe box
containing residue of “a leafy green substance,” and, in the bedroom closet, an open
safe containing a large plastic bag of what appeared to be powder cocaine. Officer
Chisholm concluded that, based on the amount of narcotics and narcotics
paraphernalia found in the complainant’s apartment, the homicide had occurred
during “a dope robbery.”
          United States Deputy Marshal R. Wood testified that, on July 31, 2002, while
he was assigned to the federal district in and around Montgomery, Alabama, he
received information that there was a warrant for appellant’s arrest in Texas and that
appellant might be traveling in the Montgomery area with a man named Mark Bagby. 
That same day, Wood and his deputy marshals located Bagby at a motel, confronted
him in the motel lobby, identified themselves, and asked him if he knew where
appellant was. Bagby informed the marshals that appellant was staying with him in
a room at the motel, and Bagby gave the marshals his room key and his consent for
them to enter the room for the purpose of arresting appellant pursuant to the warrant.
          Wood, accompanied by United States Deputy Marshals S. Recchio and C.
Reynolds, subsequently entered Bagby’s motel room and found appellant sitting up
in a bed, watching television. The marshals identified themselves, arrested appellant,
and handcuffed him. As the marshals arrested appellant, Recchio asked appellant
whether there were any weapons in the motel room, and appellant stated that there
were none. However, Recchio immediately saw a silver-colored revolver lying inside
an open bag, which was located on the floor near the bed where appellant had been
sitting. Reynolds also saw the revolver, picked it up out of the bag, and “moved the
clothes over.” When he did so, Reynolds then discovered a .380 semi-automatic
handgun lying underneath the revolver in the bottom of the bag. After the marshals
had discovered the handguns, appellant stated, “That’s not my bag at all.”
          Shortly thereafter, as the marshals were helping appellant dress, appellant
asked them to retrieve some socks for him from the same bag that contained the
handguns. Appellant later told Wood that the bag was his “business bag” and that the
silver revolver belonged to him, but told Wood that the .380 semi-automatic handgun
belonged to Bagby. Both weapons were later determined to have been reported
stolen.
          Former Harris County Assistant Medical Examiner Delbert Van Dusen, who
performed the autopsy on the complainant, testified that he detected two bullet
wounds—one in the head and one in the right hip—and removed two bullets from the
complainant’s body. Van Dusen concluded that the complainant died as a result of
the gunshot wound to his head. Houston Police Department Forensic Firearms
Laboratory Supervisor M. Lyons testified that, after federal authorities had sent him
the .380 semi-automatic handgun found in appellant’s bag, he examined and tested
it, and that he concluded that the bullets recovered from the complainant’s body had
been fired from the handgun.
Ineffective Assistance of Counsel
          In his sole point of error, appellant contends that his trial counsel, in violation
of the Sixth Amendment,


 rendered ineffective assistance. He argues that his trial
counsel was ineffective because she failed (1) to attempt to suppress the admission
of the murder weapon into evidence or to object to testimony concerning its recovery;
(2) to secure and to present the testimony of an alleged alibi witness; (3) to file a
motion to limit the admission of extraneous offense evidence and to request that a
limiting instruction be included in the jury charge concerning the consideration of
such evidence; and (4) to inform appellant of the State’s alleged offer of a plea
bargain.
          To show ineffective assistance of counsel, an appellant must demonstrate that
(1) counsel’s representation fell below an objective standard of reasonableness based
on prevailing professional norms and that, (2) but for counsel’s errors, there is a
reasonable probability the result of the proceeding would have been different. 
Strickland v. Washington, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064-65, 2068
(1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). A
“reasonable probability” is defined as a probability sufficient to undermine
confidence in the outcome. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999). An appellant must satisfy both prongs of the Strickland test, or the claim of
ineffective assistance will fail. 466 U.S. at 697, 104 S. Ct. 2069; Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001).
          The assessment of whether a defendant received effective assistance of counsel
must be made according to the facts of each case. Thompson, 9 S.W.3d at 813. We
must look to the “totality of the representation and the particular circumstances of
each case” in evaluating the effectiveness of counsel. Id. In so doing, we must also
recognize the strong presumption that counsel’s performance fell within the wide
range of reasonable professional assistance. Strickland, 466 U.S. at 688, 104 S. Ct.
at 2065; Thompson, 9 S.W.3d at 813. To defeat this presumption of reasonable
professional assistance, any allegation of ineffectiveness must be firmly founded in
the record, and the record must affirmatively demonstrate the alleged ineffectiveness. 
McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). In the absence of
evidence of counsel’s reasons for the challenged conduct, an appellate court
commonly will assume a strategic motivation, if any can possibly be imagined, and
will not conclude that the challenged conduct constituted deficient performance
unless the conduct was so outrageous that no competent attorney would have engaged
in it. Garcia, 57 S.W.3d at 440.
Suppression of Murder Weapon and Related Testimony
          Appellant concedes that, in the execution of the warrant for his arrest, the
federal marshals properly entered the motel room where he was staying. Appellant
also does not contest the validity of the arrest warrant or the authority of the marshals
to arrest him pursuant to that warrant.
          However, appellant asserts that, in the absence of a search warrant, consent, or
exigent circumstances, the search of his bag and the seizure of the murder weapon
contained therein were improper and violated both the Fourth Amendment


 of the
United States Constitution and Article I, section 9 of the Texas Constitution.


 
Appellant argues that his trial counsel was “deficient in failing to file a motion to
suppress, or timely object, to the introduction of the evidence, when testimony made
it apparent the nature of the search and seizure was unlawful, and that such deficient
performance so prejudiced [appellant] as to deny him a fair trial.” Appellant further
argues that a reasonable probability exists that, but for his counsel’s alleged errors,
the outcome of the proceeding would have been different because “no other
corroboration evidence . . . could place [appellant] at the scene of the crime . . . other
than the obviously inconsistent and shaky testimony of the surviving victim.”
          A trial counsel’s failure to file pretrial motions, including a motion to suppress
evidence, is not per se ineffective assistance of counsel. Bonilla v. State, 740 S.W.2d
583, 586-87 (Tex. App.—Houston [1st Dist.] 1987, pet. ref’d). Unless appellant
shows that the pretrial motion had merit “and that a ruling on the motion would have
changed the outcome of the case, counsel will not be ineffective for failing to assert
the motion.” Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (citing
Roberson v. State, 852 S.W.2d 508, 510-12 (Tex. Crim. App. 1993)).
          Here, the urging of a motion to suppress evidence would have been problematic
at best, especially in regard to appellant’s standing to challenge the search of the bag. 
A defendant has standing to challenge the admission of evidence obtained by a
governmental intrusion only if he presents evidence establishing that he had a
legitimate expectation of privacy in the place invaded. Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996). To carry this burden, the defendant must
prove that (1) by his conduct, he exhibited an actual subjective expectation of privacy
and (2) circumstances existed under which society was prepared to recognize his
subjective expectation as objectively reasonable. Id.
          At the time that the handguns were discovered in the bag, appellant had denied
that the bag belonged to him. Thus, the record before us supports an implied finding
that, by his conduct, appellant expressed no subjective intention of privacy over the
contents of the bag before it was searched. Only after the marshals found the
handguns in the bag did appellant admit that the bag was his. Given these
circumstances, we hold that appellant has not shown that, had his trial counsel filed
a motion to suppress evidence or objected to the introduction of the .380 handgun
into evidence, there is a reasonable probability that the trial court would have
suppressed this evidence.
          Based on the record presented, we cannot conclude either that appellant’s trial
counsel’s performance was deficient or that, but for counsel’s performance, there was
a reasonable probability that the evidence concerning the murder weapon would have
been suppressed and the result of the proceeding would have been different. 
Accordingly, we hold that appellant has not proven his claim of ineffective assistance
of counsel on this issue. See Strickland, 466 U.S. at 697, 104 S. Ct. 2069; Garcia, 57
S.W.3d at 440.
Alibi Witness
          Appellant also argues that his trial counsel rendered ineffective assistance
because she failed “to subpoena or otherwise compel” his former girlfriend, Jackie
LeBlanc, to testify on his behalf. He asserts that LeBlanc would have testified that
appellant was at her house at the time of the shooting and that his trial counsel should
have taken additional measures to secure her testimony.
          We note that the failure to call a witness during trial will not be considered
deficient performance of counsel absent a showing that such witness was available
and that the defendant would have benefitted from the witness’s testimony. King v.
State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983).
          During appellant’s case-in-chief, his trial counsel announced that she had
intended to call LeBlanc as a witness and had attempted to make arrangements to
secure LeBlanc’s trial testimony, but that LeBlanc was unavailable. Defense counsel
informed the trial court of this as follows:
I would like to put on the record before the jury comes in that I don’t
have Jackie LeBlanc, the witness. I contacted her. And I had contact
with her about picking her up this morning. She disappeared on me last
night and I have made repeated phone calls to no nil [sic].

The record indicates that LeBlanc, despite having been contacted by appellant’s trial
counsel, was either unavailable or unwilling to testify, and the record does not
indicate that the substance of LeBlanc’s testimony would have been favorable to
appellant.
          Accordingly, we hold that appellant has not shown that his trial counsel was
deficient in failing to produce LeBlanc’s testimony at trial and that appellant has not
proven his claim of ineffective assistance of counsel on this issue. See Strickland,
466 U.S. at 697, 104 S. Ct. 2069; Garcia, 57 S.W.3d at 440.
Extraneous Offense Evidence
          Appellant next argues that his trial counsel rendered ineffective assistance by
failing (1) “to file motions to limit admission of extraneous offenses or other prior
inadmissible criminal history of [appellant]” and (2) “to request a limiting instruction
to limit the jury’s consideration of the extraneous act to the reason stated in the
State’s notice, which was only for impeachment purposes.”
          Before trial, the State filed a written notice of its intent to offer evidence of
appellant’s previous convictions “and any other admissible extraneous offenses” to
impeach appellant’s testimony. At the outset of the punishment stage of trial, the
State introduced a stipulation of evidence concerning appellant’s three prior felony
convictions for unauthorized use of a motor vehicle, one prior felony conviction for
possession of marihuana, and one prior misdemeanor conviction for assault. During
cross-examination at the punishment stage of trial, appellant agreed that he had been
convicted in those prior cases. When he was questioned further concerning court
records indicating that he had additional prior convictions in Illinois, appellant
admitted to having been convicted of forgery, but he contested the validity of the
documents and information presented by the State regarding his additional alleged
convictions for battery, theft, and knowingly damaging property.
          At the punishment stage of trial, the State may offer evidence
as to any matter the court deems relevant to sentencing, including but
not limited to the prior criminal record of the defendant, his general
reputation, his character, an opinion regarding his character . . . and . . .
any other evidence of an extraneous crime or bad act that is shown
beyond a reasonable doubt by evidence to have been committed by the
defendant or for which he could be held criminally responsible,
regardless of whether he has been charged with or finally convicted of
the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2004). A trial court
has broad discretion to admit or to exclude extraneous offense evidence. Page v.
State, 125 S.W.3d 640, 649 (Tex. App.—Houston [1st Dist.] 2003, no pet.).
          Under this issue, appellant does not argue that any specific extraneous offense
evidence was objectionable or inadmissible. Rather, he asserts, generally, that “but
for counsel’s unprofessional conduct, the admission of the extraneous act evidence
probably would not have been admitted [sic].” However, as indicated by article
37.07, section 3(a), the State was permitted to offer evidence of any matter deemed
relevant to appellant’s sentencing at the punishment stage of trial, including evidence
of his prior convictions. Moreover, appellant does not contend that his counsel was
ineffective for stipulating to the admission of evidence of five of appellant’s prior
convictions. Given these circumstances, we hold that appellant has not shown the
existence of a reasonable probability that, but for his counsel’s alleged deficient
performance, the result of the proceeding would have been different. Therefore, we
hold that appellant has not proven his claim of ineffective assistance of counsel on
this issue. See Strickland, 466 U.S. at 697, 104 S. Ct. 2069; Garcia, 57 S.W.3d at
440.
          In its charge, the trial court instructed the jury that it could consider evidence
of appellant’s extraneous crimes or bad acts in assessing appellant’s punishment
“only if the extraneous crime or bad act has been shown by the State beyond a
reasonable doubt to have been committed by [appellant] or is one for which
[appellant] could be held criminally responsible.”
          Extraneous offenses admitted at the punishment stage must be proven beyond
a reasonable doubt, and the jury must be so instructed. See Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(a)(1); Collins v. State, 2 S.W.3d 432, 433 (Tex. App.—Houston
[1st Dist.] 1999, pet. ref’d). Here, the jury was properly instructed as to the State’s
burden in proving such evidence. Accordingly, we hold that appellant has not shown
that his counsel’s performance was deficient and that appellant has not proven his
claim of ineffective assistance of counsel on this issue. See Strickland, 466 U.S. at
697, 104 S. Ct. 2069; Garcia, 57 S.W.3d at 440.
Plea Bargain
          Finally, appellant argues that his trial counsel rendered ineffective assistance
because she failed to inform him of an alleged plea bargain offered by the State. 
Appellant asserts that the offer was discussed by his trial counsel and the State “at a
hearing on a motion in limine, or an off-the-record sidebar” and included “the
mention of 30 or 40 years” as a proposed agreed punishment recommendation. 
However, appellant concedes that the record contains no mention of a proposed plea
bargain and that “there may be nothing preserved for review” on this issue.
          As noted above, claims of ineffective assistance of counsel must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness. McFarland, 928 S.W.2d at 500. Here, the record contains no
indication that appellant’s trial counsel failed to inform him of an offer of a plea
bargain or that the State ever proposed a plea bargain in this case. Accordingly, we
hold that appellant has not shown that his counsel’s performance was deficient and
that appellant has not proven his claim of ineffective assistance of counsel on this
issue. See Strickland, 466 U.S. at 697, 104 S. Ct. 2069; Garcia, 57 S.W.3d at 440.
          We overrule appellant’s sole point of error.
Conclusion
          We affirm the judgment of the trial court, and we grant appellant’s court-
appointed appellate counsel’s motion to withdraw.



 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Keyes.

Do not publish. Tex. R. App. P. 47.2(b).