Opinion issued June 7, 2007












In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00061-CR






LUMAS JAMES SEALS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 0995732






MEMORANDUM OPINION


 Appellant Lumas James Seals appeals from the trial court's judgment
convicting him of capital murder. Tex. Pen. Code Ann. § 19.02(a)(2) (Vernon Supp.
2006). Appellant pleaded not guilty to the indictment that alleged that, in the course
of committing or attempting to commit the robbery of Nguyet Thi Nguyen, appellant
intentionally caused the death of Nam Kim Dang. The jury found appellant guilty and
the trial court sentenced him to life imprisonment, the only possible sentence because
the State did not seek the death penalty. Id. § 12.31(a) (Vernon Supp. 2006). In three
issues, appellant challenges the trial court's denial of his motion to suppress the
testimony of Nguyen, the sole witness who identified him as the person who
committed the offense, by alleging that an improperly suggestive photo spread tainted
Nguyen's in-court identification and that the identification evidence is legally and
factually insufficient to establish that he is the person who committed the capital
murder. We conclude that the photo spread did not taint the in-court identification
and that the evidence is legally and factually sufficient to establish appellant's
identity as the perpetrator of the offense. We affirm.Background Dang and Nguyen were born in South Vietnam, but met each other and married
in 1992 after they had separately immigrated to the United States. In 2000, they
purchased JG&M Food Mart in the Fifth Ward in Houston, Texas, where they both
worked every day. Many of the customers who frequented the store lived at the Kelly
Court Apartments located across the street. Nguyen knew many of the regular
customers, who often called her "Mama."

 On Wednesday, July 28, 2004, shortly after 8:00 a.m., as Dang and Nguyen
arrived at their store to open it for business, Nguyen saw appellant sitting under a tree
on the corner near the store. Nguyen and Dang walked together from their van to the
store. Nguyen held a bag in her hand that had medicine for her child, some credit
cards, and cash. As Dang unlocked the padlocks on the burglar bars, Nguyen saw
appellant walk towards them, but she was unconcerned about him because she knew
him as one of her customers that had been in the store about eight times. Appellant
stood right in front of Nguyen, about two feet from her. Appellant said "Hi, Mama,"
and she replied, "Hi, Baby." Appellant then shot Dang, pointed the gun at Nguyen,
and said, "Give me the bag." After taking the bag from Nguyen, appellant ran
through the gate into the Kelly Court Apartments. Dang was taken by ambulance to
the hospital, but, at 47 years of age, he died later that morning from a single gunshot
wound to the head.

 The Houston Police Department received the shooting call at 8:19 a.m., and the
case was assigned to Sergeant Binford, who quickly met Nguyen at the hospital. 
Nguyen gave Sergeant Binford "a very good description" of the shooter, telling him
that the shooter was a repeat customer at the store, although she did not know his
name. She described the shooter as a black male with a dark complexion in his early
twenties. She said that the shooter wore white and green shorts that fell below the
knee and a white and green shirt with a white stripe down the side. Nguyen said that
she had seen the shooter previously wearing a gold tooth that was removable and that
he did not wear the tooth on the day of the shooting.

 Sergeant Binford prepared a photo spread that had appellant's photograph in
it because police officers had received a tip that the shooter was named Lumas and
lived in Kelly Court. The photo spread consisted of six photos of black males with
similar physical characteristics. The people in the photos appeared similar in age,
size, and general build, with no facial hair or teeth showing. The only differences in
the photos were that three of the photos were darker than the others, but, according
to Sergeant Binford, the variations in the lighting were only in "very minor degrees"
and the photos were "remarkably much the same." Additionally, the photo used as
a filler in the number five position shows a pock mark or scar on the face, but Nguyen
did not describe the shooter as having any scars.

 That same afternoon on the day of the shooting, Sergeant Binford showed
Nguyen the photo spread. He instructed her that there may or may not be someone
that she would recognize. When the photo array was shown to Nguyen, Sergeant
Binford did not suggest to her who she should pick or tell her that he had received a
tip about the identity of the shooter. Upon observing the photo spread, Nguyen
started crying, immediately pointed to appellant's photo and identified appellant as
the person who shot her husband. Nguyen said that she was "very sure" about her
identification. After an arrest warrant was obtained, appellant was arrested two
months later on September 28. Between the time of his arrest and trial, appellant
added a tattoo of a roman numeral five to his face.

 Appellant filed a motion to suppress the identification evidence. The trial court
conducted an evidentiary hearing outside the presence of the jury, at which Sergeant
Binford and Nguyen testified. At the motion to suppress hearing, Nguyen testified
that she was able to identify appellant as the person who shot her husband because
he was her "customer that comes to the store." Nguyen said she last saw appellant
inside the store about nine weeks before the shooting and outside of the store near the
Kelly Court Apartments when she approached the store to open it for business about
three weeks and five weeks before the shooting. Sergeant Binford, however, said that
Nguyen had told him that she last saw appellant at her store the day before the
shooting. The trial court denied the motion to suppress.

 At trial, Nguyen positively identified appellant as the person who committed
the offense. Nguyen, who wears glasses to read, explained that she does not need
them to clearly see people who are nearby. Although Nguyen did not see a scar on
the face of the shooter or a tattoo on the arm of the shooter, appellant showed the jury
a small scar on the top of his forehead and a tattoo on his right arm to show that
Nguyen must be mistaken about her identification of him. 

 At trial, appellant denied shooting Dang. Appellant and his cousin Rhonda
Clayton testified that appellant was at her apartment across town at the time of the
commission of the offense, between 8 a.m. and 8:30 a.m., although appellant
acknowledged that he had been in the Fifth Ward the night before the shooting. 
Clayton's apartment is about 20 minutes by car and 16.9 miles from the place in the
Fifth Ward where the shooting occurred. Although appellant slept at Clayton's
apartment sometimes, he also frequently stayed in the Fifth Ward with a friend who
lived in Kelly Court near the grocery store or with another friend who lived eight
blocks from the grocery store. Appellant also sometimes stayed with his girlfriend,
who lives on North Wayside. Although his girlfriend and Clayton each lived some
distance from the Fifth Ward, appellant was routinely able to get rides to and from
these places, event though he did not have a car. Appellant acknowledged that he
would go into Dang's store "[p]robably every week or every other week," and that he
had been in the store enough times for Dang and Nguyen to know who he was.In-Court Identification

 In his first issue, appellant contends that the trial court erred by failing to
suppress Nguyen's in-court identification of appellant because it was tainted by an
improperly suggestive identification procedure. When faced with a challenge to an
out-of-court identification, a trial court must look to the totality of the circumstances
surrounding the identification to determine whether a procedure was so unnecessarily
suggestive and conducive to mistaken identification that the defendant was denied
due process of law. Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988). The
trial court must determine (1) whether the identification procedure was impermissibly
suggestive, and (2) whether the suggestive procedure gave rise to a very substantial
likelihood of irreparable misidentification. Barley v. State, 906 S.W.2d 27, 33 (Tex.
Crim. App. 1995). A defendant must prove each prong by clear and convincing
evidence. Goldberg v. State, 95 S.W.3d 345, 378 (Tex. App.--Houston [1st Dist.]
2002, pet. ref'd) (citing Barley, 906 S.W.2d at 33-34). 

 We conclude that appellant has not proven the first prong that concerns
whether the identification procedure was impermissibly suggestive. See Barley, 906
S.W.2d at 33. The variations in the lighting of the photographs were minimal, with
three photos slightly darker. Additionally, appellant only complains that out of the
six photos, one photo that was used as a filler showed a person with a scar. Appellant
has not shown how these slight variations in the photos impermissibly suggested that
Nguyen should choose his photo over any other photo. See Page v. State, 125 S.W.3d
640, 647 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd) ("Slight differences in the
background color and brightness of photographs are insignificant"); Barley, 906
S.W.2d at 33-34 (holding that photographic array containing two "older and faded"
photographs and photograph "obviously taken in a different setting" not
impermissibly suggestive). 

 We also conclude that appellant has not proven the second prong, which
requires the application of five factors enumerated in Neil v. Biggers to determine
whether the suggestive procedure gave rise to a substantial likelihood of irreparable
misidentification. 409 U.S. 188, 199-200, 93 S. Ct. 375, 382 (1972). These five
factors include: (1) the opportunity to view the criminal at the time of the crime; (2)
the witness's degree of attention; (3) the accuracy of the witness's prior description
of the criminal; (4) the level of certainty demonstrated by the witness at the
confrontation; and (5) the length of time between the crime and confrontation. 
Barley, 906 S.W.2d at 34-35.

 Under the first factor, the evidence shows that Nguyen saw appellant sitting
under a tree before the offense, spoke to him before the shooting, watched him shoot
Dang and point the gun at her, and had ample opportunity to view him at the time of
the crime at around 8 a.m., in the daylight. The second factor that concerns Nguyen's
degree of attention shows that Nguyen paid some attention to appellant when she saw
him before the shooting and paid full attention to appellant during and after the
shooting, as appellant stood in front of her when he spoke to her and shot her
husband. The third factor pertains to the accuracy of the witness's prior description
of the criminal, which was characterized by Sergeant Binford as a very good
description. Nguyen said she knew the shooter as a repeat customer at the store,
although she did not know his name. Nguyen also described the physical
characteristics of the shooter as a black male with a dark complexion in his early
twenties, and she also gave a clothing description. Although Nguyen did not identify
a scar or any tattoos on the face of the shooter, the scar on appellant's face was slight
and hardly visible and the tattoo on his face was added after he was arrested. 
Appellant also has a tattoo on his right arm that he claims Nguyen would have seen
if he had been the shooter. However, the State suggested that the tattoo on his arm
could have been added after his arrest, like the tattoo to his face. Alternatively,
Nguyen could have failed to see the tattoo on his arm because she was paying strict
attention to his face. The fourth factor, the level of certainty demonstrated by
Nguyen, weighs heavily in favor of admission of the evidence. Upon observing the
photo spread, Nguyen started crying and immediately pointed to appellant's photo,
stating that she was very sure that he was the shooter and that she recognized him as
a customer whom she had seen on many occasions at the store. Appellant also
acknowledged that he had been at the store many times and that Nguyen would know
who he was. Under the fifth factor, the length of time between the crime and
confrontation, there was about an eight-hour interval between the shooting and
Nguyen's identification of appellant in the photo spread. Each of these factors under
the second prong weigh in favor of the trial court's ruling to admit the identification
evidence. We conclude that appellant has failed to show by clear and convincing
evidence that, even if the photo spread was a suggestive procedure, it gave rise to a
very substantial likelihood of irreparable misidentification. See Barley, 906 S.W.2d
at 33. We hold that the trial court did not err by admitting the identification evidence. 
We overrule appellant's first issue. 

Sufficiency of the Evidence

 Appellant's second and third issues challenge the legal and factual sufficiency
of the evidence to establish his identity as the person who committed the capital
murder. Appellant contends that Nguyen's testimony is unreliable because, if
appellant had shot Dang, Nguyen would have noticed the tattoo on his right arm, and
she identified him based on an improperly suggestive photo spread. Appellant asserts
that the State failed to sufficiently rebut his defense of mistaken identity and alibi.

A. Legal Sufficiency

 In a legal-sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jurors are the exclusive judges of
the facts, the credibility of the witnesses, and the weight to give their testimony. 
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). A jury is entitled
to accept one version of the facts and reject another, or reject any part of a witness's
testimony. Id. 

 Viewing the evidence relating to the identification of appellant by Nguyen in
a light most favorable to the jury's verdict, the evidence shows that she saw him from
the time she first arrived at the store to the time of the shooting, during daylight
hours, spoke to him, recognized him as a former customer at the store, positively
identified him from a photo spread consisting of six photos of people with similar
characteristics, and positively identified him in court. See id. at 917. We hold that
the evidence is legally sufficient to establish appellant's identity as the person who
committed the offense. See King, 29 S.W.3d at 562. We overrule appellant's second
issue. 

B. Factual Sufficiency

 When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will set
the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong
and manifestly unjust or (2) the verdict is against the great weight and preponderance
of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Under
the first prong of Johnson, we cannot conclude that a conviction is "clearly wrong" or
"manifestly unjust" simply because, on the quantum of evidence admitted, we would
have voted to acquit had we been on the jury. Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006). Under the second prong of Johnson, we cannot declare that
a conflict in the evidence justifies a new trial simply because we disagree with the
jury's resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able
to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury's verdict. Id. In conducting a
factual-sufficiency review, we must also discuss the evidence that, according to the
appellant, most undermines the jury's verdict. See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

 We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King, 29 S.W.3d at 562. The fact-finder alone determines what weight
to place on contradictory testimonial evidence because that determination depends on
the fact-finder's evaluation of credibility and demeanor. Cain v. State, 958 S.W.2d
404, 408-09 (Tex. Crim. App. 1997). As the determiner of the credibility of the
witnesses, the fact-finder may choose to believe all, some, or none of the testimony
presented. Id. at 407 n.5.

 The only evidence that appellant claims shows that the photo spread was
tainted is that some photos were darker than others. Sergeant Binford, however,
explained that the color variations were very slight. Appellant does not explain how
the differences in the shades of three of the photos affected the in-court identification
by Nguyen, who said that she knew appellant as a previous customer, although she did
not know his name. (1) The jury, as the sole judge of the credibility of the witnesses,
could have determined that the slight variations in the photos did not taint the photo
spread or cause an improper in-court identification due to the undisputed fact that
Nguyen knew who appellant was from her prior contacts with him. See id. The jury,
as the sole judge of the weight to give testimony, could have also determined that
appellant either added the tattoo to his right arm after he was arrested, just like he
added the tattoo to his face, or that Nguyen's focus was on the face of the shooter,
rather than the shooter's arm. See id. Further, although appellant produced testimony
that he was elsewhere at the time of the offense, the jury was authorized to determine
the weight to give that testimony. See id.

 When the evidence establishing appellant's identity as the shooter is viewed
neutrally and in context of the entire record, it is not so weak and inadequate that the
finding that he is the shooter is clearly wrong and manifestly unjust, and the great
weight and preponderance of the evidence does not contradict the jury's conclusion
that appellant was the shooter. See Watson, 204 S.W.3d at 417. Accordingly, we hold
that the evidence was factually sufficient to establish appellant's guilt for capital
murder.

 Conclusion

 We affirm the judgment of the trial court.


 Elsa Alcala

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.


Do not publish. Tex. R. App. P. 47.2(b).
1. Appellant does not challenge the sufficiency of the evidence on the ground that one
of the filler photos had a scar on the person's face.