**Darnell Alonzo PAGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–02–01213–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 4, 2003.

expressly disapproved this Court's limiting *Comer* to its facts. 60 S.W.3d at 872.

Crespin Michael Linton, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Amanda J. Peters, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and HANKS.

## OPINION

TERRY JENNINGS, Justice.

A jury found appellant, Darnell Alonzo Page, guilty of aggravated robbery. The jury also found true the allegation in an enhancement paragraph that appellant had previously been convicted of a felony and it assessed his punishment at confinement for life and a $10,000 fine. In six points of error, appellant contends that the evidence was legally insufficient to support his conviction and that the trial court erred in admitting pretrial and in-court identification evidence, denying his motion for a continuance, admitting a videotape of the robbery into evidence, admitting evidence that he possessed a handgun prior to the robbery, and denying his motion to suppress evidence found on him at the time of his arrest. We affirm.

## Facts

John Forgas, the complainant, testified that, on October 2, 2001, he was working as an assistant store director at a Randall's grocery store in Bellaire, Texas. At about 6:20 a.m., appellant entered the store, approached Joel Caniz, the Hot Deli Manager, and inquired about applying for a job. Caniz responded by calling Forgas to the front of the store to speak to appellant. Forgas went to the front of the store and explained to appellant that there were no openings at that time. While Forgas explained this to him, appellant began "inching" his way closer to the four foot high swinging door that separated the two of them. Before Forgas realized what was happening, appellant moved through the swinging door, pulled a "black handgun" out of his pants, and pointed it at Forgas. Appellant ordered Forgas to hand over the store's "security tapes," but Forgas told him that the store was installing a new security system and that it was not yet operational.[1] Appellant then said "he wanted the money," and he walked Forgas over to the store's courtesy booth while pointing his handgun at Forgas's mid-section. As they walked, appellant put on a motorcycle helmet that he had been holding in his hands, and then he and Forgas entered the courtesy booth together.

Inside the courtesy booth, appellant came into contact with Frances Sparks, the courtesy booth manager, who was busy counting money that the store had taken in the previous night. Once he saw Sparks, appellant immediately pointed his handgun at her and then ordered Sparks and Forgas to put all the money in the courtesy booth into a Halloween candy bag that he had taken from a store display. Forgas and Sparks complied with appellant's demands. As soon as they finished filling the bag, appellant grabbed it and ran out

1. In fact, the system had been operational for less than 24 hours.

of the store. Forgas then called for emergency assistance, and police officers arrived "moments" later.

James Bonham, a Randall's loss prevention investigator, testified that he arrived at the store shortly after police. Once there, Bonham accessed the store's "brand-new digital recording system" and replayed the recording of the robbery for the officers. Bonham then produced a still photograph of appellant from the digital recording system and copied the recording of the robbery onto a videotape. Bonham gave the still photograph and the videotape to the officers.

Bellaire Police Detective Z. Woods testified that he was in charge of investigating the robbery. During his investigation, he developed a lead indicating that appellant was the perpetrator of the robbery. Woods obtained a copy of appellant's driver's license photograph and constructed a photographic array that included appellant's photograph and the photographs of five other men. When Woods showed the array to Forgas, Sparks, Caniz, and William Cowsert, the receiving manager, the four Randall's employees who witnessed the robbery, only Forgas and Sparks identified appellant as their assailant.

Houston Police Officer G. Johnson testified that he was dispatched to a home in Missouri City on November 3, 2001 to respond to a domestic disturbance call. Johnson arrived at the home, saw that the front door had been kicked in, and found appellant in the living room. When Johnson asked appellant "what was going on," appellant responded that "the guy who kicked the door in was in the backroom." After Johnson did not find anyone in the backroom, he asked appellant for his name and identification. Appellant stated that his identification was outside, and Johnson accompanied him to retrieve it. At this point, appellant attempted to drive off on his motorcycle, but Johnson and two other Houston Police Officers, who arrived at the scene after Johnson, were able to subdue and arrest appellant. The officers then searched appellant and found a loaded handgun in his "fanny pack" and an unloaded handgun in his "shoulder bag."

## Legal Sufficiency of the Evidence

In his first point of error, appellant argues that the evidence was legally insufficient to support his conviction because the State did not prove "its case beyond a reasonable doubt" as (1) appellant had gold teeth at the time of the robbery and "none of the witnesses to the robbery told Detective Woods that the robber had gold teeth," and (2) Sparks failed to identify appellant's photograph in the photographic array at trial.

We review a legal sufficiency challenge by viewing the evidence in the light most favorable to the verdict to determine if any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim. App.2000). Although our analysis considers all evidence presented at trial, we may not reweigh the evidence and substitute our judgment for that of the fact finder. *Id.*

A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. TEX. PEN.CODE ANN. § 29.03(a)(2) (Vernon 2003). A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* at § 29.02 (Vernon 2003). "In the course of committing theft" means conduct that occurs in an attempt to commit theft, during the commission of theft,

or in immediate flight after the commission of theft. *Id.* at § 29.01(1) (Vernon 2003).

■ Here, Detective Woods testified that, shortly after the robbery, Forgas "immediately" identified appellant's photograph in the photographic array, and Sparks identified it in "like [five] seconds." Forgas and Sparks testified at trial that appellant was the perpetrator of the robbery and that he used a handgun to commit the robbery. Furthermore, Forgas testified that, during the robbery, "[he] feared for [his] life and [Sparks'] life," and Sparks testified that "[she] thought that [appellant] was going to kill [Forgas and her]."

■ It is true that neither Forgas, Sparks nor Cowsert "told Detective Woods that the robber had gold teeth." It is also true that Sparks failed to identify appellant in the photographic array at trial. However, Forgas testified that appellant's gold teeth were "one of the first things [he] noticed" about him, and that he did not "know why he failed to put it in [his] affidavit." Also, Sparks testified that she misidentified her assailant in the photographic array at trial because "[she was] nervous." As the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony, a jury may believe or disbelieve all or any part of a witness's testimony. *McKinny v. State*, 76 S.W.3d 463, 468–69 (Tex.App.-Houston [1st Dist.] 2002, no. pet.). We will not substitute our judgment for that of the fact finder. Accordingly, we hold that the evidence was legally sufficient to prove the essential elements of the offense of aggravated robbery beyond a reasonable doubt.

We overrule appellant's first point of error.

## Impermissibly Suggestive Pretrial Identification

In his second point of error, appellant argues that the trial court erred in denying his motion to suppress the witness's in-court identification of him as the perpetrator of the robbery because the content of the photographic array was impermissibly suggestive.

■ The standard of review on a claim that an in-court identification should not have been admitted due to the taint of an impermissibly suggestive pretrial identification procedure is set forth in *Loserth v. State*, 963 S.W.2d 770 (Tex.Crim.App. 1998). Our standard of review depends upon the type of question presented to the reviewing court. *Id.* at 772. First, as a general rule, we must give almost total deference to a trial court's determination of historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of the credibility and demeanor of the witnesses. *Id.* Second, we give the same amount of deference to the trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* Finally, we review de novo "mixed questions of law and fact" that do not fall within the second category. *Id.* In this case, the question whether an identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification is a mixed question of law and fact that does not turn on an evaluation of credibility and demeanor. *Id.* at 772–73. Accordingly, we apply a de novo standard of review.

■ A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law.

*Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Barley v. State,* 906 S.W.2d 27, 32–33 (Tex.Crim.App.1995). We apply a two-step analysis to determine the admissibility of an in-court identification and ask (1) whether the pretrial identification procedure was impermissibly suggestive and, if so, (2) whether the improperly suggestive procedure created a very substantial likelihood of irreparable misidentification. *Simmons,* 390 U.S. at 384, 88 S.Ct. at 971; *Barley,* 906 S.W.2d at 33. A defendant bears the burden of establishing by clear and convincing evidence that the pretrial identification procedure was impermissibly suggestive. *Barley,* 906 S.W.2d at 33–34. Furthermore, the analysis requires an examination of the totality of the circumstances surrounding the identification. *Id.* at 33.

 Suggestiveness may arise from the manner in which a pretrial identification procedure is conducted. *Id.* For example, a police officer may point out the suspect or suggest that a suspect is included in a lineup or photographic array. *Id.* Also, the content of a lineup or photographic array itself may be suggestive if the suspect is the only individual who closely resembles the description given by the witness. *Id.* Furthermore, an individual procedure may be suggestive or the cumulative effect of procedures may be suggestive. *Id.*

Appellant asserts that the content of the photographic array was impermissibly suggestive because (1) Detective Woods used appellant's Texas Driver's License photograph in the array and "none of the other [five] pictures were Texas Driver's License photographs," and (2) Woods admitted that the "background" and "texture" of his photograph were different than the "background" and "texture" of some of the other photographs in the array.

 However, after reviewing the photographic array, we find that its content was not impermissibly suggestive. All of the men pictured in the array are African–American, are wearing civilian clothes, have short black hair, and appear to be similar in age. Although there may be some slight differences between appellant's photograph and some of the other photographs in the array, a photographic array is not impermissibly suggestive merely because each photograph can be distinguished in some manner from the photograph of the accused. *Mungia v. State,* 911 S.W.2d 164, 168 (Tex.App.-Corpus Christi 1995, no pet.). Slight differences in the background color and brightness of photographs are insignificant. *Id.;* see *Barley,* 906 S.W.2d at 33–34 (holding that a photographic array containing two "older and faded" photographs and a photograph "obviously taken in a different setting" was not impermissibly suggestive). Accordingly, we hold that the content of the photographic array was not impermissibly suggestive.

We overrule appellant's second point of error.

### Motion for a Continuance

In his third point of error, appellant argues that the trial court erred in denying his motion for a continuance because "his new attorneys had only [three] weeks to prepare for trial" and "he needed more time to locate necessary witnesses."

 However, appellant made only an oral motion for a continuance. To preserve error, a motion for a continuance must be in writing and verified. *Montoya v. State,* 810 S.W.2d 160, 176 (Tex.Crim. App.1989); *Lewis v. State,* 664 S.W.2d 345, 349 (Tex.Crim.App.1984). Accordingly, appellant has preserved nothing for appellate review.

We overrule appellant's third point of error.

### Admitting Videotape into Evidence

In his fourth point of error, appellant argues that the trial court erred in admitting the videotape of the robbery into evidence because the State failed to authenticate it. Specifically, appellant asserts that "Bonham could not testify as to the accuracy of the contents of the videotape because he was not present in the store at the time of the robbery."

We review a trial court's ruling on authentication issues under an abuse of discretion standard. *Angleton v. State*, 971 S.W.2d 65, 67 (Tex.Crim.App.1998). Under this standard, an appellate court must uphold a trial court's admissibility decision if it is within the zone of reasonable disagreement. *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim.App.2001).

Texas Rule of Evidence 901 establishes the authentication requirement for the admissibility of evidence. *See* TEX.R. EVID. 901; *Angleton*, 971 S.W.2d at 67. The authentication requirement is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX.R. EVID. 901(a). Additionally, Rule 901(b) provides a nonexclusive list of methods to authenticate evidence. One such method is the testimony of a witness with knowledge that a matter is what it is claimed to be. TEX.R. EVID. 901(b)(1).

In *Reavis v. State*, 84 S.W.3d 716 (Tex. App.-Fort Worth 2002, no pet.), the Fort Worth Court of Appeals held that a trial court did not abuse its discretion in admitting a security videotape into evidence even though the authenticating witness at trial had not personally witnessed the events depicted on the videotape.[2] *Id.* at 720. The authenticating witness testified as follows: on the morning of the day of the offense, he loaded the videotape and pressed "record;" he removed the videotape shortly after the offense and reviewed it with police officers; he reviewed it again before trial to ensure that the videotape had not been tampered with or altered. *Id.* The court held that this was "sufficient evidence to enable a reasonable juror to conclude the videotape was what the State claimed it to be." *Id.* We agree with the holding in *Reavis*.

Here, Bonham testified that the grocery store's "brand-new digital recording system" recorded images from 16 video cameras and automatically saved those images onto a computer hard drive. Bonham further testified that he accessed the digital recording system's hard drive shortly after the robbery and reviewed the recording of the robbery with police officers. Bonham then copied the recording of the robbery onto a videotape and gave it to the officers. Additionally, Bonham reviewed the videotape before trial and testified that it had not been altered in any way. We hold that this evidence was sufficient to enable a reasonable juror to conclude that the videotape was "what the State claimed

---

**2.** In its analysis, the court looked to a number of federal circuit court of appeals cases for guidance. *See United States v. Rembert*, 863 F.2d 1023, 1027 (D.C.Cir.1988) (holding that the ultimate test for authentication is always whether the proponent of the evidence has made a showing "sufficient to permit a reasonable juror to find that the evidence is what its proponent claims"); *United States v. Tay-* *lor,* 530 F.2d 639, 641–42 (5th Cir.), *cert. denied,* 429 U.S. 845, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976) (holding that testimony that showed how the tape was put in the camera, how the camera was activated, the removal of the tape immediately after the offense, the chain of custody, and how the film was developed was sufficient to support the trial court's decision to admit the evidence).

it to be" and that the trial court did not abuse its discretion in admitting the videotape of the robbery into evidence.

We overrule appellant's fourth point of error.

## Prior Gun Possession

In his fifth point of error, appellant argues that the trial court erred in admitting evidence that he "possessed a black handgun" before the robbery. Janice Crosby, appellant's girlfriend, testified that before the robbery, appellant "carried a black handgun." Appellant asserts that Crosby's testimony was inadmissible as an extraneous act. *See* TEX.R. EVID. 404(b). Appellant further asserts that any probative value of Crosby's testimony was outweighed by its prejudicial effect. *See* TEX.R. EVID. 403.

▉ Rule 404(b) provides that evidence of "other crimes, wrongs or acts" is not admissible to prove a defendant's character to show action in conformity therewith. TEX.R. EVID. 404(b). However, this type of evidence may be admissible if it has relevance to a material issue in the case apart from its tendency to prove the character of the defendant. *Linder v. State,* 828 S.W.2d 290, 296 (Tex.App.-Houston [1st Dist.] 1992, no pet.). Permissible purposes for which evidence of "other crimes, wrongs or acts" may be admitted include the following: "proof of motive, opportunity, intent, preparation, plan, knowledge, *identity,* or absence of mistake or accident." TEX.R. EVID. 404(b) (emphasis added).

▉ Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of *unfair prejudice* ..." TEX.R. EVID. 403 (emphasis added). The opponent of the evidence must not only demonstrate the negative attributes of the evidence but must also show that these negative attributes "substantially outweigh" any probative value. *Montgomery v. State,* 810 S.W.2d 372, 377 (Tex.Crim.App.1990) (op. on reh'g). We review a trial court's decision to admit evidence under an abuse of discretion standard. *Id.* at 378-79.

▉ The State asked Crosby whether she knew that appellant carried a black handgun, and she responded that "yes, he did." Although there was no evidence before the jury that it was a crime for appellant to carry a handgun, Crosby's testimony was evidence of other "acts."

▉ Even though Crosby's testimony was evidence of other "acts," it tended to establish appellant's identity as the perpetrator of the robbery. Appellant maintained throughout trial that the State was prosecuting "the wrong man." In his defense, appellant introduced evidence that he could not have committed the robbery because he often drove one of his stepdaughters to school at the same time of day that the robbery occurred. Evidence of extraneous acts may be admissible to rebut defensive theories. *Lane v. State,* 933 S.W.2d 504, 519 (Tex.Crim.App.1996). Here, part of the State's identity evidence was Crosby's testimony that appellant carried a handgun that matched the description of the handgun used in the robbery. Accordingly, we hold that the trial court did not abuse its discretion in admitting Crosby's testimony under Rule 404(b).

▉ Appellant also asserts that the probative value of the testimony that he "previously possessed a handgun" was "outweighed by [its] prejudicial effect" because the State failed to demonstrate that the handgun was used in the robbery. However, because the State demonstrated that appellant used a black handgun during the robbery, the trial court could have reasonably inferred that Crosby's testimo-

ny had relevance beyond its value as character evidence. Moreover, the evidence was not necessarily prejudicial because the previous handgun possession was not shown to be unlawful. Accordingly, we further hold that the trial court did not abuse its discretion in admitting Crosby's testimony under Rule 403.

We overrule appellant's fifth point of error.

### Evidence Found on Appellant when Arrested

In his sixth point of error, appellant argues that the trial court erred in denying his motion to suppress evidence found in his possession when he was arrested because his "warrantless" arrest was unlawful as he "was not in a suspicious place," and "there was no evidence that [he] was guilty of a felony or a breach of the peace."

 A trial court's ruling on a motion to suppress evidence will not be set aside absent an abuse of discretion. *Taylor v. State,* 945 S.W.2d 295, 297 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). We review a trial court's ruling on a motion to suppress using the bifurcated standard of review set forth in *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997). We give almost total deference to a trial court's determination of historical facts that depend on credibility choices, but we review *de novo* a trial court's application of the law of probable cause. *Wilson v. State,* 98 S.W.3d 265, 271 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). When the trial court does not make findings of fact, we review the evidence in the light most favorable to the trial court's ruling, and we will uphold the ruling if it is supported by any applicable legal theory. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990); *Dickey v. State,* 96 S.W.3d 610, 612

(Tex.App.-Houston [1st Dist.] 2002, no pet.).

 When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or to effect his escape. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent concealment or destruction. *Id.* at 763, 89 S.Ct. at 2040.

 Officer Johnson testified that he arrested appellant, but did not specify the basis for his arrest. Nevertheless, the trial court could have reasonably found that Johnson arrested appellant for the offense of evading detention. A person evades detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. TEX. PEN.CODE ANN. § 38.04(a) (Vernon 2003).

Here, Officer Johnson testified that he was dispatched to a house in Missouri City to respond to a domestic disturbance call and was given a description of the suspect's clothing. When he arrived at the house, Johnson saw that the front door had been kicked in and found appellant in the living room wearing clothes matching the description of the suspect's clothes. On these facts, Johnson was justified in detaining appellant for further investigation. When Johnson requested appellant's identification, appellant told him that it was outside and then appellant attempted to flee on his motorcycle. Therefore, the record supports an implied finding by the trial court that Johnson lawfully arrested and searched appellant after appellant attempted to drive away from the house on his motorcycle. Accordingly, we hold that

the trial court did not abuse its discretion in denying appellant's motion to suppress evidence found in his possession at the time of his arrest.

We overrule appellant's sixth point of error.

### Conclusion

We affirm the judgment of the trial court.