Opinion issued July 16, 2009

 







In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00720-CR

NO. 01-07-00721-CR

NO. 01-07-00722-CR






MYKAYA LEE RILEY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 434th District Court

Fort Bend County, Texas

Trial Court Cause No. 39915A, 39916A, 39917A






MEMORANDUM OPINION


 A jury convicted appellant, Mykaya Lee Riley, of three separate offenses of
aggravated sexual assault in trial cause numbers 39915A, 39916A and 39917A. (1) 
Specifically, in trial cause number 39915A, appellant was found guilty of the
aggravated sexual assault of complainant K.B. In trial cause number 39916A,
appellant was found guilty of the aggravated sexual assault of complainant B.G. In
trial cause number 39917A, appellant was found guilty of the aggravated sexual
assault of complainant J.B.

 Appellant had two prior felony convictions--a conviction for attempted
burglary of a building in 1990 and a conviction for aggravated robbery in 1992. The
jury found the two punishment enhancement paragraphs in the indictment true and
assessed a sentence of fifty years confinement for each aggravated sexual assault
offense. In four points of error, appellant argues that the evidence presented at trial
was legally and factually insufficient to support his convictions, that the in-court
identification of appellant as assailant was tainted due to an impermissibly suggestive
photo lineup procedure, and that the trial court erred in failing to include an
instruction on a lesser included offense in the jury charge.

 We affirm the three trial court convictions. Background

 On January 20, 2004 at approximately 8:00 a.m., the complainant B.G. was
walking from a friend's house to a neighborhood store on or near Woodfair Drive in
Houston, Texas. Appellant drove up to B.G. in a red Mitsubishi Eclipse and asked
her if she needed a ride. B.G. had never met appellant before this encounter, but she
agreed to take a ride from him. As soon as B.G. sat in the passenger seat of the
Eclipse, appellant pointed a black revolver at her head. He told B.G. that "he killed
a ho [sic] and my wife left me." Using the gun to ensure her compliance, appellant
forced B.G. to place her head beneath the dashboard of the Eclipse. B.G. still
managed to look out the window of the Eclipse to determine their location. She
determined that appellant was taking her to the Brightwater Subdivision in Missouri
City, Texas.

 Appellant drove into the garage of his home at 4526 Lakeside Meadow in
Missouri City, Texas ("home"). While pointing the gun at B.G., he forced her out of
the Eclipse and placed duct tape on her mouth and eyes. He also used brown rope to
bind her hands. B.G. could see appellant through a hole in the duct tape covering her
eyes. Appellant led her into the den of his house and placed her near a white or tan
leather sofa ("sofa"). He went into the kitchen and left B.G. alone in the den. When
he returned, he removed the duct tape from B.G.'s mouth and forced her to perform
oral sex on him. While still pointing the gun at her head, appellant untied her hands
and told B.G. to take off her clothes. After B.G. complied, appellant made her bend
face-forward over the sofa and began performing anal sex on her. When B.G. began
to scream because of the discomfort, appellant brought out a black whip and hit B.G.
with it. He told B.G. that if she did not stop screaming, he "would beat her with [the
whip]." 

 After the anal sex act was completed, appellant returned to the kitchen for a
few seconds. When he returned, he again forced B.G. to bend face-forward over the
couch and performed vaginal sex on her from behind. After completing the vaginal
sex act, appellant returned to the kitchen. B.G. removed the tape from her eyes and
released herself from the rope. She ran naked out the door of appellant's house to
find a neighbor willing to call the police on her behalf. 

 Stephen Montoya, appellant's neighbor residing at 4531 Lakeside Meadow in
Missouri City, Texas, heard B.G. screaming and walked outside to find B.G.
searching for help. He beckoned B.G. over to his house but then hid after appellant
drove up in the Eclipse. Appellant waved a gun at B.G. and seized her. Montoya
called the police. After appellant forced B.G. back into the car, he told her that he
would "have to kill her." 

 Appellant returned to the house and forced B.G. inside. They heard police
sirens, and appellant got nervous. Appellant gave B.G. water and fed her gumbo. He
promised to let her go if she agreed not to tell anyone about her capture and sexual
assault. She agreed not to tell anyone. Appellant told her to take a shower in his
bathroom. He also gave B.G. clean undergarments and returned her clothes. B.G. put
on her clothes and appellant dropped her off at her friend's house. 

 On January 21, 2004, B.G. approached Houston Police Department ("HPD")
Officer S. Chaffin in the parking lot of an apartment complex located at 10202 Forum
Park in Houston, Texas. B.G. told Officer Chaffin that she had been sexually
assaulted the previous day. Another HPD officer took B.G. to Southwest Memorial
hospital in Houston, Texas for a sexual assault examination. 

 At trial, B.G. testified about her encounter with appellant. On cross-examination, she admitted that she had ten previous felony convictions, including two
convictions for delivery of a controlled substance in 1998 and 2005, three prostitution
convictions in 2002, 2003 and 2004, a public lewdness conviction in 2004, and a
possession-of-controlled-substance conviction in 2006.

 On January 29, 2004, complainant J.B. was walking toward the 10000 block
of Bissonnet near the corner of Woodfair and Bissonnet. Appellant, driving a gold
Jeep Cherokee, was traveling in the opposite direction from J.B. Appellant turned his
vehicle around, drove past J.B. and parked at a convenience store. Although J.B. was
unacquainted with appellant, she walked up to the Jeep and made an agreement with
appellant to exchange consensual vaginal sex at appellant's home for a $30 payment. 
J.B. got into appellant's Jeep and they drove to appellant's home. Appellant drove
onto the driveway outside the garage of his home. Appellant and J.B. left the Jeep
and walked through appellant's dining room and into his den. J.B. sat on appellant's
sofa as he left the den briefly. Appellant returned to the den, leaping onto J.B. and
pointing his gun at her head. He forced J.B. to lie on her stomach on the floor. He
covered J.B.'s eyes with duct tape. J.B. asked appellant if she could go to the
restroom; he led her to his restroom and she used it. Appellant led J.B. back to the
den and told her to get undressed. She complied and laid on her stomach on the floor. 
Appellant taped J.B.'s wrists and ankles, effectively immobilizing J.B. 

 Appellant left the den for five to ten minutes. He returned, untaped J.B.'s
ankles and forced her to kneel. He told J.B. to perform oral sex on him and she
complied. After the oral sex act was completed, appellant placed J.B. over his sofa
face-forward and performed anal sex on her. J.B. did not resist because she was
afraid that appellant would shoot her. 

 After the anal sex act was completed, appellant took J.B.'s jacket , placed it on
the sofa and told her to sit on the jacket. He removed the tape from J.B.'s eyes and
hands and allowed J.B. to clean herself in his bathroom. J.B. went into the bathroom,
cleaned herself and got dressed. After J.B. left the bathroom, appellant taped her eyes
and hands again. He led her into the garage and forced her into the back seat and
made her lie down. Appellant drove for 10 minutes and then untaped J.B.'s hands
and dropped her off behind a corner store near the corner of Country Creek and
Woodfair in Houston, Texas. J.B. walked home. 

 On January 30, 2004, J.B. intended to walk to the HPD Westwood substation
to report the sexual assault. On her way to the substation, she saw HPD officer I.
Sanders monitoring traffic in the parking lot of a Chevron service station at the corner
of Beechnut and Beltway 8 in Houston, Texas. J.B. reported the crime to Officer
Sanders. Officer Sanders took J.B. to Southwest Memorial Hospital to get a sexual
assault examination. 

 At trial, J.B. testified about her encounter with appellant. On cross-examination, she admitted that she had solicited eight men for prostitution, not
including appellant. She also admitted that she had a theft conviction in 1994.

 On February 17, 2004, complainant K.B. was walking from a motel to a
friend's house on Club Creek Drive in Houston, Texas. Appellant drove past her in
his Jeep, turned around and parked at Emerald Apartments on Woodfair and Club
Creek. Appellant offered K.B. $25 to come to his house to smoke marijuana with
him. When K.B. told him she did not smoke marijuana, he asked if she would "ride
with him" for $25. K.B. understood that appellant was asking her to negotiate an
agreement of consensual sex for a payment of $25. 

 To confirm that appellant was not a police officer, K.B. touched appellant on
his penis. Appellant responded by touching K.B. on her breast. K.B. agreed to the
sex-for-payment arrangement and got into the passenger seat of appellant's Jeep and
they drove behind another apartment complex located on Woodfair Drive in Houston,
Texas. Appellant drove to the apartment complex, but he got nervous after he saw
several people watching them. 

 Appellant drove near the fence line of another apartment complex. K.B.
climbed over the console and into the back seat and took off her pants. Appellant
followed K.B. into the back seat, knelt and pulled out his gun. Appellant forced K.B.
to lie on her stomach and place her hands behind her back. Appellant used duct tape
to bind K.B.'s ankles and wrists and placed duct tape over her face.

 Appellant left the back seat and entered the driver's seat of his Jeep. K.B.'s
view was only partially obstructed because she could see through a hole in the tape
covering her face. Appellant drove away from the apartment complex while holding
his gun to K.B.'s head. K.B.'s leg "popped loose" from the duct tape during their
travel to appellant's home.

 Appellant drove into his garage and closed the garage door behind the vehicle. 
He pulled K.B. out of the Jeep and led her into the den. The duct tape fell from
K.B.'s eyes, and K.B. saw appellant standing naked next to his sofa. Appellant told
K.B. to perform oral sex on him and K.B. complied. After she performed the oral sex
act, he told K.B. to lie on her back. Appellant put on a condom and performed a
vaginal sex act on K.B. 

 After he performed the vaginal sex act on K.B., he found her pants and dressed
her. He also gave K.B. a glass of water. Appellant led K.B. out to the garage and
forced her into the back seat of his Jeep. He drove away from his home for five to ten
minutes and then decided to return to his home with K.B. Appellant returned to his
garage and led K.B. out of the back seat of the Jeep. He led K.B. back to his sofa in
his den and pulled down K.B.'s pants. Appellant forced K.B. to bend over his sofa
face-forward and performed an anal sex act on her. 

 After he performed the anal sex act, he led K.B. out to the garage and placed
tape over her entire head. Appellant led K.B. into the back seat of the Jeep and drove
away from his home. He drove K.B. to a Kroger strip center in Stafford, Texas and
dropped her off. Appellant also left K.B. with a steak knife to cut herself loose from
the duct tape.

 K.B. cut herself loose and found someone to give her a pen and paper to write
down appellant's license plate number. She walked over to the Kroger store located
at 220 FM 102 in Stafford, Texas and found Stafford Police Department Officer L.
Whitby. K.B. approached Officer Whitby and reported her capture and sexual
assault. K.B. still had the duct tape on her body and was carrying appellant's steak
knife. Officer Whitby called an ambulance and K.B. was transported to Memorial
Hospital in Fort Bend for a sexual assault examination.

 At trial, K.B. testified about her encounter with appellant. On cross-examination, she admitted that she had thirteen previous felony convictions,
including four theft convictions in 1992, 1995, 1996 and 2003, a reckless-injury-of-
a-child conviction in 1994, an extortion conviction in 1995, two forgery conviction
in 1997 and 2000, a possession-of-a-controlled-substance conviction in 1999, a
credit-card-abuse conviction in 2000, a manufacturing-of-a-controlled-substance
conviction in 2002, a delivery-of-a-controlled-substance conviction in 2002, and a
theft conviction in 2003. 

 On March 2, 2004, Missouri City Police Sergeant Pete Paske received an
assignment to investigate J.B.'s sexual assault complaint. Sergeant Paske got
information about J.B.'s complaint from HPD Detective K. Swatzel and HPD
Sergeant G.C. Glenn. Sergeant Paske, Detective Swatzel, and Sergeant Glenn took
J.B. around the Missouri City area to determine where she was taken by appellant. 
J.B. recalled a sign that read "Brightwood," and Paske determined that the sign
actually read "Brightwater."

 When the initial ride with J.B. did not locate appellant's home, Sergeant Paske
decided to patrol the Brightwater neighborhood for several days looking for
appellant's home or vehicle. Sergeant Paske saw appellant's Jeep and retrieved the
license plate number. Using the license plate number, Sergeant Paske discovered the
name of appellant's brother, Rosell Dinell Riley. Using this name, Sergeant Paske
asked Detective Swatzel and HPD to assist in preparing a photo lineup. Detective
Swatzel prepared the photo lineup using the picture of appellant's brother.

 Sergeant Paske received the HPD photo lineup and showed the photos to J.B.
after giving her an admonishment that the photo lineup might not show her assailant. 
J.B. viewed the photo spread but did not identify anyone as her assailant. 

 Sergeant Paske then discovered appellant's name and used driver's license
information to get appellant's address. He asked the Texas Department of Public
Safety ("DPS") to prepare a photo lineup, this time using appellant's picture. DPS
returned a photo lineup and placed appellant's picture in the third position on the
lineup. On March 15, 2004, Sergeant Paske showed the DPS photo lineup to J.B. 
She immediately identified appellant as her assailant and initialed and dated
appellant's photo located in the third position on the photo lineup.

 Based on J.B.'s identification, Sergeant Paske obtained a search warrant for
appellant's home. Sergeant Paske found appellant's gun between his mattress and
box spring. Appellant was arrested on March 16, 2004. On March 22, 2004, Paske
showed a different copy of the DPS photo lineup to B.G. B.G. likewise identified
appellant as her assailant. Paske did not show the photo spread to K.B.

 At trial, the State presented evidence obtained from a fiber and duct tape
anaylsis through testimony from DPS trace evidence analyst Faith Davis. Davis
testified that the DPS lab performed a fiber and duct tape analysis on K.B.'s clothes
and the duct tape used by appellant on K.B. Davis testified that the DPS lab found
fibers from the outfit K.B. was wearing during her assault in appellant's home. The
DPS lab also found that the duct tape used on K.B. matched one roll of duct tape
found at appellant's residence. 

 The State also presented DNA evidence through the testimony of Jennifer Otto,
a forensic DNA analyst employed by Identigene. Identigene received anal swabs and
buccal swabs from K.B. and buccal swabs from appellant. Otto testified that K.B.
and appellant could not be excluded as contributors to the DNA mixture detected in
samples taken from K.B. Identigene also took samples of the stains from the jacket
J.B. was wearing during her assault and a buccal swab from appellant. The DNA
found on J.B.'s jacket matched the DNA from appellant's buccal swab.

 Appellant presented no evidence during the guilt/innocence phase of the jury
trial. However, he raised several objections at trial. He objected that the photo
spread had not been properly authenticated or identified by [J.B.]. He also argued
that the photo spread was impermissibly suggestive. 

 Appellant based his objection on J.B.'s testimony. J.B. testified that the photo
spread shown to her when she made her out-of-court identification did not look like
the photo spread shown to her at trial because "it was like in a larger format." J.B.
also testified that the photo spread "was like in a big binder and there was a couple
of photos already in there." She testified that she could not recall if the photo spread
shown at trial displayed the same photos as the photo spread shown to her when she
made her out-of-court identification, but she testified that the photo of appellant in
the photo spread shown at trial was both larger than and in a different position from
the photo of appellant in the photo spread she saw when she made her out-of-court
identification. Appellant renewed his objection during Sergeant Paske's testimony
prior to B.G.'s testimony. However, B.G. was not asked about the photo spread at
trial. J.B., K.B., and G.B. all immediately identified appellant at trial when asked if
they saw their attacker in the courtroom.

 Appellant also raised an objection to the jury charge before the trial court read
the charge to the jury. The trial court convened an on-the-record bench conference
to hear appellant's objection. Appellant's counsel requested that language be
included in the jury charge which would instruct the jury that, in each case, it could
find that appellant committed the lesser included offense of aggravated assault if it
found that he "commit[ted] an assault" on the complainant by "intentionally or
knowingly causing bodily injury" to the complainant and that he committed
aggravated assault if he "commit[ted] an assault, as defined above, and cause[d]
severe bodily injury to the [complainant]." He requested that the charge state that "if
the jury does not find [appellant] guilty of aggravated sexual assault, you will move
onto the lesser included offense of aggravated assault."

 Appellant's counsel argued that, in addition, the charge:

 should say that now if you find from the evidence beyond a reasonable
doubt that on about the so and so date that this occurred in Fort Bend
County, Texas, [appellant] did then and there intentionally or knowingly
strike or beat the complainant with his fist or stomp and kick [the
complainant] with his feet or hands, thereby causing serious bodily
injury to the complainant as alleged in the indictment, then you'll find
the defendant guilty of aggravated assault as charged. And to wit, that
a handgun was used in the commission of said assault. That would be
a period. Unless you so find from the evidence beyond a reasonable
doubt or if you have a reasonable doubt thereof, comma, you will acquit
the defendant of aggravated assault.


The trial court denied appellant's request. Appellant was convicted of three offenses
of aggravated sexual assault. 

Legal and Factual Sufficiency

 In his first and second points of error, appellant argues that the evidence
presented at trial is legally and factually insufficient to support his three convictions
for aggravated sexual assault. 

 Standard of Review

 To determine the legal sufficiency of the evidence, we must view the evidence
in the light most favorable to the verdict and then determine, based on that evidence
and reasonable inferences from it, whether a rational juror could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2790 (1979); Rollerson v. State, 227 S.W.3d 718, 724
(Tex. Crim. App. 2007). In conducting this review, we do not reevaluate the weight
and credibility of the evidence, but act only to ensure that the jury reached a rational
decision. Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). But evidence
that is legally sufficient to support a conviction may not be factually sufficient to
support conviction. Rollerson, 227 S.W.3d at 724. 

 "Evidence is factually insufficient to support the verdict if it is clearly wrong
or manifestly unjust or against the great weight and preponderance of the evidence." 
Id. A factual sufficiency review involves three ground rules. Lancon v. State, 253
S.W.3d 699, 704 (Tex. Crim. App. 2008). First, we must recognize that a jury has
already passed on the facts, and we must accord the jury the proper deference to avoid
substituting our judgment for that of the jury. Id. at 704-05 (citing Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996)). Second, when we find the facts determined
by the jury to be insufficient to affirm a conviction, we must clearly lay out and
explain how the evidence supporting the verdict is too weak on its own, or how
contradicting evidence greatly outweighs evidence supporting the verdict. Id. at 705. 
Finally, we view all of the evidence in a neutral light when conducting this review. 
Id. We may set aside a verdict only when the evidence supporting the verdict is so
weak as to render the verdict clearly wrong or manifestly unjust. Id. (citing Cain v.
State, 958 S.W.2d 404, 406 (Tex. Crim. App. 1997)). 

 Both legal and factual sufficiency standards require the reviewing court to
consider all of the evidence. Rollerson, 227 S.W.3d at 724. "The difference between
the two standards is that the former requires the reviewing court to defer to the jury's
credibility and weight determinations while the latter permits the reviewing court to
substitute its judgment for the jury's on these questions 'albeit to a very limited
degree.'" Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006) (quoting
Watson v. State, 204 S.W.3d 404, 416-17 (Tex. Crim. App. 2006)). In reality, a
factual sufficiency review is barely distinguishable from a legal sufficiency review. 
Id. 

 Aggravated Sexual Assault

 A person commits the offense of aggravated sexual assault if he intentionally
or knowingly causes the penetration of the anus, mouth, or sexual organ of another
person without the person's consent and uses or exhibits a deadly weapon in the
course of the same criminal episode. Tex. Penal Code Ann. § 22.021(a) (Vernon
Supp. 2008); see also Washington v. State, 127 S.W.3d 197, 204 (Tex.
App.--Houston [1st Dist.] 2003, pet. dismissed) (holding evidence not rendered
factually insufficient to support conviction for aggravated sexual assault due to fact
that victim's testimony in second trial was inconsistent with that she gave in first trial;
any inconsistency in victim's testimony went to her credibility, and jury could have
reasonably believed that victim was assaulted even if she failed to remember specific
details surrounding assault clearly or was otherwise inconsistent); see also Garrett
v. State, 998 S.W.2d 307, 311-12 (Tex. App.--Texarkana 1999, pet. ref'd) (holding
evidence was legally and factually sufficient to establish that defendant used or
exhibited deadly weapon to facilitate offense of aggravated sexual assault; victim
testified that defendant had gun in his hand while he sexually assaulted her, and she
yielded to his demands because he had gun, although defendant claimed that he set
gun aside before having consensual sex with victim); see also Guevara v. State, 4
S.W.3d 771, 778 (Tex. App.--San Antonio 1993, no pet.) (holding evidence in
aggravated sexual assault prosecution was legally sufficient to support finding that
defendant used deadly weapon when, on both direct and cross examination,
complainant testified that she saw gun, recognized it as deadly weapon and was
threatened by it); see also Page v. State, 819 S.W.2d 883, 887-88 (Tex.
App.--Houston [14th Dist.] 1991, pet. ref'd) (holding evidence of nonconsensual
nature of sexual intercourse was legally sufficient to sustain defendant's conviction
of aggravated sexual assault of his estranged wife that occurred after defendant held
gun on her and ordered her into bedroom; even though State never specifically asked
complainant whether or not she consented to sexual intercourse, complainant did
testify that she did not want to have sexual intercourse and that she was afraid that
defendant would kill her if she did not comply).

 A complainant's uncorroborated testimony alone is factually sufficient to
support a conviction for aggravated sexual assault under section 22.021. Tex. Code
Crim. Proc. Ann. art. 38.07 (Vernon 2005); see Garcia v. State, 563 S.W.2d 925,
928 (Tex. Crim. App.1978); see also Benton v. State, 237 S.W.3d 400, 404 (Tex.
App.--Waco 2007, pet. ref'd). The State has no burden to produce corroborating or
physical evidence, and the jury determines the credibility of the witnesses and may
"believe all, some, or none of the testimony." Chambers v. State, 805 S.W.2d 459,
461 (Tex. Crim. App.1991); Benton v. State, 237 S.W.3d 400, 404 (Tex. App.--Waco
2007, pet. ref'd).

 Trial Cause No. 39915A

 Appellant argues that the evidence presented at trial was legally insufficient to
support his conviction for the aggravated sexual assault of K.B. because there was no
evidence that appellant used or exhibited a deadly weapon in the course of the same
criminal episode. Appellant also argues that the evidence presented at trial was
legally insufficient to support his conviction for the aggravated sexual assault of K.B.
because of a lack of physical evidence and corroborating testimony. Appellant also
argues that the evidence presented at trial was factually insufficient because K.B.'s
testimony was unreliable due to unspecified inconsistencies, lack of memory, and
motive to lie due to her previous convictions. 

 K.B. testified that appellant used a handgun to force her to have vaginal and
anal sex without her consent. The State presented fiber analysis evidence which
demonstrated that fibers from K.B.'s clothing matched fiber residue found in
appellant's home. The State also presented duct tape analysis evidence that the duct
tape used on K.B. matched one roll of duct tape found at appellant's home. It also
presented DNA evidence that could not exclude K.B. or appellant from a sample
taken from K.B.'s anal swabs. Appellant presented no evidence during the
guilt/innocence phase of the trial. 

 A complainant's uncorroborated testimony is factually sufficient to support a
conviction for aggravated sexual assault. See Tex. Code Crim. Proc. Ann. art.
38.07. Also, the jury is free to determine the credibility of the witnesses. Chambers,
805 S.W.2d at 461; Benton, 237 S.W.3d at 404. Viewing the evidence in a light most
favorable to the verdict, we conclude that a rational jury could find beyond a
reasonable doubt that appellant committed aggravated sexual assault of K.B. See
Rollerson, 227 S.W.3d at 724. Viewing the evidence presented regarding the
aggravated sexual assault of K.B. neutrally, we conclude that it is not so weak as to
render the verdict clearly wrong or manifestly unjust. See id.; see also Lancon, 253
S.W.3d at 704. We conclude, therefore, that the evidence presented at trial that
appellant committed aggravated sexual assault of K.B. is both legally and factually
sufficient to support his conviction in trial cause number 39915A.Trial Cause No. 39916A

Appellant argues that the evidence presented at trial was legally insufficient to
support his conviction for the aggravated sexual assault of B.G. because there was no
evidence that appellant used or exhibited a deadly weapon in the course of the same
criminal episode. Appellant also argues that the evidence presented at trial was
factually insufficient to support his conviction for the aggravated sexual assault of
B.G. because the forensic nurse examiner found no trauma on B.G.'s vaginal and anal
areas during her examination. 

 B.G. testified that appellant used a handgun to force her to have vaginal oral
and anal sex without her consent. B.G. identified appellant at trial. Stephen Montoya
testified that he was at his home located on appellant's street and saw B.G. running
naked down the street and searching for help. Montoya also testified that he saw
appellant drive near his house, brandish a gun toward B.G., and force her into his
vehicle. Appellant presented no evidence during the guilt/innocence phase of the
trial. 

 The State had no burden to produce medical evidence corroborating B.G.'s
testimony. See Tex. Code Crim. Proc. Ann. art. 38.07. Moreover, the jury
determined the credibility of B.G.'s testimony and was free to "believe all, some, or
none of the testimony." Chambers, 805 S.W.2d at 461; Benton, 237 S.W.3d at 404. 
Viewing the evidence in a light most favorable to the verdict, we conclude that a
rational jury could find beyond a reasonable doubt that appellant committed
aggravated sexual assault of B.G. See Rollerson, 227 S.W.3d at 724. Viewing the
evidence neutrally, we further conclude that the evidence presented regarding
aggravated sexual assault was not so weak as to render the verdict clearly wrong or
manifestly unjust. See id. We conclude that the evidence presented at trial that
appellant committed aggravated sexual assault of B.G. is both legally and factually
sufficient to support the conviction in trial cause number 39916A. 

Trial Cause No. 39917A

Appellant argues that the evidence presented at trial was legally insufficient to
support his conviction for the aggravated sexual assault of J.B. because of a lack of
physical evidence and corroborating testimony linking him to the offense. Appellant
argues that the evidence presented at trial was factually insufficient to support his
conviction for the aggravated sexual assault of J.B. because the forensic nurse
examiner found no trauma on B.G.'s vaginal and anal areas during her examination. J.B. testified that appellant used a handgun to force her to have oral and anal
sex without her consent. The State presented DNA evidence demonstrating that
appellant's DNA was present on J.B.'s clothing. Appellant presented no evidence
during the guilt/innocence phase of the trial. Viewing the evidence in the light most
favorable to the verdict, we conclude that a rational jury could find beyond a
reasonable doubt that appellant committed the aggravated sexual assault of J.B. See
Rollerson, 227 S.W.3d at 724.

 The State had no burden to produce medical evidence corroborating B.G.'s
testimony. See Tex. Code Crim. Proc. Ann. art. 38.07. Moreover, the jury
determined the credibility of J.B.'s testimony and was free to "believe all, some, or
none of the testimony." Chambers, 805 S.W.2d at 461; Benton, 237 S.W.3d at 404. 
Therefore, we conclude that the evidence presented regarding aggravated the sexual
assault was not so weak as to render the verdict clearly wrong or manifestly unjust.
See Rollerson, 227 S.W.3d at 724. We conclude that the evidence presented at trial
that appellant committed aggravated sexual assault of J.B. is both legally and
factually sufficient to support the conviction in trial cause number 39917A.

Tainted In-Court Identification

 In his third point of error, appellant argues that in each case he was unfairly
prejudiced by an in-court identification that was tainted by an impermissibly
suggestive pre-trial photographic identification. Although appellant complains about
the photo array in all three cases, the photo array complained of--State's Exhibit
3--was shown only to J.B. and B.G. It was never shown to K.B., and,while G.B. was
shown the array, she was not asked about it at trial. Appellant thus bases his
contention that the out-of-court photographic identification procedure was
impermissibly suggestive on J.B's testimony at trial that the photo array admitted into
evidence was not the same array as previously presented to her and that the
photographs of the individuals in the array were not located in the same places as
previously presented to her. 

 Analysis 

 An in-court identification is inadmissible when it has been tainted by an
impermissibly suggestive pretrial photographic identification. Ibarra v. State, 11
S.W.3d 189, 195 (Tex. Crim. App. 1999). The test is whether, considering the totality
of the circumstances, "the photographic identification procedure was so
impermissibly suggestive as to give rise to a very substantial likelihood of irreparable
misidentification."  Id. (citing Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct.
967, 971 (1968)). Reliability is the critical question. Id. If the totality of the
circumstances reveals no substantial likelihood of misidentification despite a
suggestive pretrial procedure, subsequent identification testimony will be deemed
"reliable," "reliability [being] the linchpin in determining the admissibility of
identification testimony." Id. Thus, an appellate court applies a two-step analysis to
determine the admissibility of an in-court identification, asking (1) whether the
pretrial identification procedure was impermissibly suggestive and, if so, (2) whether
the improperly suggestive procedure created a very substantial likelihood of
irreparable misidentification. Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct.
967, 971 (1968); Barley v. State, 906 S.W.2d 27, 33-34 (Tex. Crim. App. 1995);
Page v. State, 125 S.W.3d 640, 647 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd).

 A pretrial identification procedure may be so suggestive and conducive to
mistaken identification that subsequent use of that identification at trial would deny
the accused due process of law. Simmons, 390 U.S. at 384, 88 S. Ct. at 971; Barley,
906 S.W.2d at 33-34; Page, 125 S.W.3d at 646. Suggestiveness may arise from the
manner in which a pretrial identification procedure is conducted. Page, 125 S.W.3d
at 647. For example, a police officer may point out the suspect or suggest that a
suspect is included in a lineup or photographic array. Id. Also, the content of a lineup
or photographic array itself may be suggestive if the suspect is the only individual who
closely resembles the description given by the witness. Id. Furthermore, an individual
procedure may be suggestive or the cumulative effect of procedures may be
suggestive. Id. 

 If a pretrial identification procedure was impermissibly suggestive, we weigh
five exclusive factors against the corrupting effect of the suggestive identification
procedure in assessing the reliability of an in-court identification. Neil v. Biggers, 409
U.S. 188, 199, 93 S. Ct. 375, 382 (1972). These are: (1) the opportunity of the witness
to view the criminal at the time of the crime; (2) the witness's degree of attention; (3)
the accuracy of the witness's prior description of the criminal; (4) the level of certainty
demonstrated by the witness at the confrontation, and (5) the length of time between
the crime and the confrontation. Id. We consider the five Biggers factors, all issues
of historical fact, deferentially in a light favorable to the trial court's ruling. Id. The
factors, viewed in this light, are then weighed de novo against "the corrupting effect"
of the suggestive pretrial identification procedure. Page, 125 S.W.3d at 647 (citing
Loserth v. State, 963 S.W.2d 770, 773-74 (Tex. Crim. App. 1998)). 

 Even if an out-of-court identification procedure is impermissibly suggestive,
however, an in-court identification may still be admitted "as long as the record reveals
that the witness' prior observation of the accused was sufficient to serve as an
independent origin for the in-court identification." Jackson v. State, 657 S.W.2d 123,
130 (Tex. Crim. App. 1983). 

 Here, appellant failed to show that the photo spread was impermissibly
suggestive, even if J.B.'s testimony that appellant's photo was in a different place
when she was shown the photo spread with his photo was credited by the finder of fact
as true. Jurors are free to "believe all, some, or none of the testimony." Chambers, 805
S.W.2d at 461. Appellant does not state how the photo array J.B. remembered as
different was so conducive to misidentification that its use at trial denied appellant due
process of law, and we see nothing in the photo array or its use that rises to the level
of an "impermissibly suggestive" pre-trial identification procedure. See Barley, 906
S.W.2d at 33. 

 Moreover, even if the photo array had been shown to be impermissibly
suggestive, the record shows an independent basis for the in-court identification of 
each complainant. See Jackson, 657 S.W.2d at 130. J.B., B.G., and K.B. all quickly
identified appellant at trial. Each was certain and definite about her identification. 
Each had ample time to view appellant at the time of the crime. Thus, we hold that the
trial court properly admitted the in-court identifications

 We overrule appellant's third point of error.

Lesser Included Offense in Jury Charge

 In his fourth point of error, appellant argues that the trial court erred in its
refusal to instruct the jury on the lesser included offense of aggravated assault in
addition to the offense of aggravated sexual assault with which he was charged in each
case. For each of the three cases, appellant makes an identical argument that there is
unchallenged evidence that each of the complainants had consensual sex with
appellant and there was evidence that appellant had a handgun in the home where the
consensual sex occurred. Therefore, appellant argues, "there was evidence presented
for the jury to rationally consider the lesser-included offense of aggravated assault." 
He further argues that "under the evidence presented, if the jury found that any assault
occurred at all, it was an aggravated assault" and to find that if "any assault occurred
at all, it was an aggravated assault." 

 Analysis

 The Texas Code of Criminal Procedure defines a lesser included offense as
follows:

An offense is a lesser included offense if:


(1) it is established by proof of the same or less than all the facts required
to establish the commission of the offense charged;


(2) it differs from the offense charged only in the respect that a less
serious injury or risk of injury to the same person, property, or public
interest suffices to establish its commission;


(3) it differs from the offense charged only in the respect that a less
culpable mental state suffices to establish its commission; or


(4) it consists of an attempt to commit the offense charged or an
otherwise included offense.


Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006). A defendant is entitled to an
instruction on a lesser included offense when the proof for the offense charged
includes the proof necessary to establish the lesser included offense and there is some
evidence in the record that would permit a jury rationally to find that if the defendant
is guilty, he is guilty only of the lesser included offense. Hall v. State, 225 S.W.3d
524, 536 (Tex. Crim. App. 2007) (citing Bignall v. State, 887 S.W.2d 21, 23 (Tex.
Crim. App. 1999)). 

 The Court of Criminal Appeals has held that we must use a "cognate-pleadings"
approach when determining whether there may be a conviction for a lesser included
offense in a particular case. Hall, 225 S.W.3d at 535. The determination is a two-step
analysis. Id. The first step in the analysis is to compare the elements of the greater
offense and the lesser offense without any reference to the facts of the case. Id. at 535. 
This is a question of law. Id. Applying the first step to a particular case, we consider
only the statutory elements of the charged offense as modified by the particular
allegations in the indictment. Id. at 536. We then compare the modified elements with
the elements of the alleged lesser included offense and decide whether the elements
of the alleged lesser included offense are "established by proof of the same or less than
all the facts required to establish the commission of the offense charged." Id. (quoting
Tex. Code Crim. Proc. Ann. art. 37.09(a) (Vernon 2006)). The second step in the
analysis is to determine whether there is evidence to support giving the instruction to
the jury. Hall, 225 S.W.3d at 536. In this step of the analysis, anything more than a
scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. Id. In
other words, the evidence must establish the lesser included offense as a "valid,
rational alternative to the charged offense." Id.

 Section 22.021(a) of the Texas Penal Code provides, in relevant part, that a
person commits the offense of aggravated sexual assault:

 (1) if the person


 (A) intentionally or knowingly:


 (i) causes the penetration of the anus or sexual organ of
another person by any means, without that person's
consent


 (ii) causes the penetration of the mouth of another person
by the sexual organ of the actor, without the person's
consent; or


 (iii) causes the sexual organ of another person, without
that person's consent, to contact or penetrate the
mouth, anus, or sexual organ of another person,
including the actor [and]

 . . . 


 (2) if:


 (A) the person:


 (i) causes serious bodily injury or attempts to cause the
death of the victim or another person in the court of
the same criminal episode;


 (ii) by acts or words places the victim in fear that
death, serious bodily injury, or kidnaping will
be imminently inflicted on any person;


 (iii) by acts or words occurring in the presence of the
victim threatens to cause the death, serious bodily
injury, or kidnaping of any person; [or]


 (iv) uses or exhibits a deadly weapon in the course
of the same criminal episode.

. . . .


 () An aggravated sexual assault under this section is without
the consent of the other person if the aggravated sexual
assault occurs under the same circumstances listed in
Section 22.011(b). 

 . . . .


 Tex. Penal Code Ann. § 22.021(Vernon Supp. 2008).


 Section 22.011(b) of the Penal Code provides that a sexual assault is without
consent if:

(1) the actor compels the other person to submit or participate
by the use of physical force or violence; [or]


(2) the actor compels the other person to submit or participate
by threatening to use force or violence against the other
person, and the other person believes that the actor has the
present ability to execute the threat.


Tex. Penal Code Ann. § 22.011(b) (Vernon Supp. 2008).

 Section 22.02(a) of the Penal Code provides, in relevant part, that a person
commits the offense of aggravated assault if he commits an assault as defined in
section 22.01 and he:

 (1) causes serious bodily injury to another, including the
person's spouse; or

 

 (2) uses or exhibits a deadly weapon during the commission of
the assault.


Tex. Penal Code Ann. § 22.02(a) (Vernon Supp. 2008).

 Section 22.01(a) provides that a person commits the offense of assault if the
person:

(1) intentionally, knowingly, or recklessly causes bodily injury to
another, including the person's spouse;


(2) intentionally or knowingly threatens another with imminent bodily
injury, including the person's spouse; or


(3) intentionally or knowingly causes physical contact with another
when the person knows or should reasonably believe that the other
will regard the contact as offensive or provocative.


Tex. Penal Code Ann. § 22.01(a) (Vernon Supp. 2008).

 At trial, appellant argued that evidence that sexual contact was consensual in
each case supported the inclusion in the charge of the lesser included offense of
aggravated assault in addition to the charged offense of aggravated assault. Appellant
requested inclusion of the following language:

 [Appellant]: Our law provides that a person commits an assault if
the person intentionally or knowingly causes bodily
injury to another, including the person's spouse,
period. A person commits aggravated assault if the
person commits an assault, as defined above, and
causes severe bodily injury to the other, including a
person's spouse, period. And by the term bodily
injury is meant physical pain, illness or impairment
or physical condition, period. By the term serious
bodily injury is meant bodily injury that creates a
substantial risk of death or disfigurement, comma, or
protracted loss or impairment of the function of any
bodily member or organ. Three, a person acts
intentionally, or with intent, when it is his conscious
objective or desire to cause the result, period. A
person acts knowingly or with knowledge when he is
aware that his conduct is reasonably certain to cause
the result. I believe that that [sic] language should be
included as a lesser included offense regarding the
aggravated assault, and should include to wit, with
a--, I believe the indictment says handgun. I'm not
certain. I have the indictment. . . . Further, it should
say, and if, and if the jury does not find [appellant]
guilty of aggravated sexual assault, you will move
onto the lesser included offense of aggravated
assault. Now, it should say that now if you find from
the evidence beyond a reasonable doubt that on about
the so and so date that this occurred in Fort Bend
County, Texas, [appellant] did then and there
intentionally or knowingly strike or beat the
complainant with his fist or stomp and kick [the
complainant] with his feet or hands, thereby causing
serious bodily injury to the complainant as alleged in
the indictment, then you'll find the defendant guilty
of aggravated assault as charged. And to wit, that a
handgun was used in the commission of said assault. 
That would be a period. Unless you so find from the
evidence beyond a reasonable doubt or if you have a
reasonable doubt thereof, comma, you will acquit the
defendant of aggravated assault.


The trial court denied appellant's request. 

 Appellant's proferred charge did not reflect either the indictments in the three
cases or the evidence offered at trial. Nor did it accurately state the requirements for
a finding of aggravated assault. 

 In cause number 39915A, the State indicted appellant for the offense of
aggravated sexual assault of K.B. while using and exhibiting a deadly weapon. The
indictment stated in relevant part:

 [Appellant] intentionally and knowingly cause[d] the penetration of the
vagina of [K.B.] by [appellant's] sexual organ, without the consent of
[K.B.], and in the course of the same criminal episode the defendant used
and exhibited a deadly weapon, to-wit, a handgun.


 [Appellant] intentionally and knowingly cause[d] the penetration of the
anus of [K.B.] by [appellant's] sexual organ, without the consent of
[K.B.], and in the course of the same criminal episode the defendant used
and exhibited a deadly weapon, to-wit, a handgun.


 In cause number 39916A, the State the State indicted appellant for the offense
of aggravated sexual assault of B.G. while using and exhibiting a deadly weapon,
stating:

 [Appellant] intentionally and knowingly cause[d] the penetration of the
vagina of [B.G.] by [appellant's] sexual organ, without the consent of
[B.G.], and in the course of the same criminal episode the defendant used
and exhibited a deadly weapon, to-wit, a handgun.


 [Appellant] intentionally and knowingly cause[d] the penetration of the
anus of [B.G.] by [appellant's] sexual organ, without the consent of
[B.G.], and in the course of the same criminal episode the defendant used
and exhibited a deadly weapon, to-wit, a handgun.


 [Appellant] intentionally and knowingly cause[d] the penetration of the
mouth of [B.G] by [appellant's] sexual organ, without the consent of
[B.G], and in the course of the same criminal episode the defendant used
and exhibited a deadly weapon, to-wit, a handgun.


 Finally, in cause number 39917A, the State indicted appellant for the offense
of aggravated sexual assault of J.B. while using and exhibiting a deadly weapon,
stating:

 [Appellant] intentionally and knowingly cause[d] the penetration of the
mouth of [J.B.] by [appellant's] sexual organ, without the consent of
[J.B.], and in the course of the same criminal episode the defendant used
and exhibited a deadly weapon, to-wit, a handgun.


 [Appellant] intentionally and knowingly cause[d] the penetration of the
anus of [J.B.] by [appellant's] sexual organ, without the consent of [J.B.],
and in the course of the same criminal episode the defendant used and
exhibited a deadly weapon, to-wit, a handgun.


 Each of the indictments in these three cases alleged that appellant committed the
offense of aggravated sexual assault by intentionally or knowingly causing the
penetration of another person's mouth, vagina, or anus with his sexual organ without
the consent of the other person while using and exhibiting a deadly weapon in the
course of the same criminal episode. Tex. Penal Code Ann. § 22.021. In none of
these cases did the indictment charge that appellant did then and there intentionally
and knowingly strike or beat the complainant with his feet or stomp or kick the
complainant with his feet or hands while using a handgun, thereby causing serious
bodily injury to the complainant.

 In addition, in each case, the evidence clearly showed that while the
complainant may have initially consented to have sexual relations with appellant, the
encounter swiftly turned to non-consensual sexual penetration when appellant
compelled each complainant to submit by threatening each with a handgun, satisfying
the definition of non-consensual sexual assault set out in section 22.01(b) of the Penal
Code. 

 Finally, under the theory of aggravated assault proffered by appellant, a person
commits aggravated assault if he intentionally or knowingly causes serious bodily
injury to another while using or exhibiting a deadly weapon. Tex. Penal Code Ann.
§ 22.01; 22.02(a). This is not the case. Under section 22.02(a) of the Penal Code, a
person commits the offense of aggravated assault if, while committing assault, he
"causes serious bodily injury to another" or "uses or exhibits a deadly weapon." Tex.
Penal Code Ann. § 22.02(a). 

 Appellant was charged in each of these three cases with committing the offense
of aggravated sexual assault while using a deadly weapon, and the evidence supported
each element of the charge. Aggravated assault consisting of appellant's causing each
complainant serious bodily injury by stomping or kicking was not charged under the
indictments in these cases, and, if it had been, it would not have been established by
proof of the same facts, or less than all the facts necessary to establish appellant's
commission of the offense of aggravated assault as charged in the indictments. See
Tex. Penal Code Ann. § 22.021(a) (aggravated sexual assault) and 22.02(a)
(aggravated assault). Therefore, we hold that appellant failed to satisfy the first step
of the Hall analysis in any of the three charged cases. Tex. Code Crim. Proc. Ann.
art. 37.09(a); Hall, 225 S.W.3d at 536.

 Appellant also failed to satisfy the second prong of Hall in any of the cases. 
Appellant argues that there is unchallenged evidence that each of the three
complainants had consensual sex with him. However, the State presented testimony
from the three complainants that appellant forced them to perform oral, anal, and/or
vaginal sex without their consent while using or exhibiting a deadly weapon. Because
there is no proof that appellant did not sexually assault the complainants without their
consent while using or exhibiting a deadly weapon, appellant fails to satisfy both steps
of the Hall analysis. See Hall, 225 S.W.3d at 536. We hold that appellant was not
entitled to an instruction on aggravated assault in any of the three cases.

 We overrule appellant's fourth point of error. 









Conclusion

 We affirm the judgments of the trial court.





 Evelyn V. Keyes

 Justice


Panel consists of Justices Jennings, Keyes, and Higley.

Do not publish. Tex. R. App. P. 47.4.






+
1. See Tex. Penal Code Ann. § 22.021 (Vernon Supp. 2008).