# NO. 12-17-00019-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TEVIN BREON DILLARD,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 7TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Tevin Breon Dillard appeals from his conviction for credit card or debit card abuse. In six issues, Appellant challenges certain evidentiary rulings and the sufficiency of the evidence to support his conviction. We affirm.

## BACKGROUND

The grand jury indicted Appellant for using a debit card, with the intent to fraudulently obtain a benefit, with knowledge that the card had not been issued to him and not used with the effective consent of the cardholder, Alexus Wright. Kelly Community Credit Union (the Credit Union) issued the card to Wright. Appellant pleaded "not guilty."

At trial, Officer Joshua Darty with the Tyler Police Department testified that he responded to the call regarding abuse of a credit card on December 5, 2015. He met Wright, who showed him her bank statement that reflected transactions she claimed were unauthorized. Wright told Darty that her boyfriend, Appellant, made the transactions after using the card to pump gas and not returning the card. She identified five transactions as unauthorized.

Wright testified that she and Appellant stopped for gas on December 4. She gave Appellant her debit card to pay for the gas. She later saw Appellant place some change in her purse and assumed he also returned the card. She dropped Appellant off at the campus where he attended school and went to work. A few hours later, around 1:00 a.m., she discovered that

Appellant never returned the card and that her account was "drained." Appellant did not answer when she attempted to call him. Wright identified the following unauthorized transactions: (1) a Wally's Grocery (Wally's) transaction at 9:51 p.m., (2) a Credit Union transaction at 10:07 p.m., and (3) three other transactions at 10:25 p.m., which the record demonstrates occurred at Right Track. She denied loaning the card to Appellant or giving him permission to use the card. Although she never gave Appellant her pin number, she used the number in his presence and the number was her birthday, the date of which Appellant knew.

Detective David Cook with the Tyler Police Department testified that he followed up on the five transactions. Cook obtained surveillance from Wally's and the Credit Union. Wright identified Appellant as the person shown on the surveillance recording from Wally's, but she could not identify the man on the Credit Union recording. Cook likewise testified that he could not make a positive identification from the images obtained from the Credit Union and testified that it could possibly be a different person. He could locate no surveillance from Right Track. Because of the times of the transactions, he assumed someone drove from place to place. He testified that it would take less than two minutes to drive from campus to Wally's and five to ten minutes to drive from Wally's to the Credit Union. He further testified that the surveillance recording from the Credit Union did not show a vehicle, as the person using the card approached the ATM on foot. He believed that the person did not want the vehicle to be seen.

Cook explained that it is not unusual for a person who procures a card without authorization to share the card with friends or associates. He also explained that the person typically uses the card as soon as possible because there is a certain window of opportunity before the card owner discovers the card is missing. He testified that Wright's card was never recovered and he had no reason to suspect, question, or doubt Wright's account of the events.

At the conclusion of trial, the jury found Appellant "guilty" of debit card abuse and assessed his punishment at confinement for twenty-four months in a state jail facility. This appeal followed.

### SUFFICIENCY OF THE EVIDENCE

In issue six, Appellant contends the evidence is insufficient to support his conviction for abuse of a debit card. We address this issue first because, if sustained, Appellant would be

entitled to an acquittal rather than a new trial. *See Rains v. State*, 604 S.W.2d 118, 120 (Tex. Crim. App. 1980).

**Standard of Review**

When reviewing the sufficiency of the evidence, we determine whether, considering all the evidence in the light most favorable to the verdict, the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id*. We give deference to the jury's responsibility to fairly resolve evidentiary conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**Analysis**

Appellant challenges the sufficiency of the evidence on grounds that (1) the record fails to establish the date and time of the transaction at Wally's or connect Appellant's visit to Wally's to the charged offense, and (2) the surveillance from the Credit Union shows an unidentified man using the ATM and the record contains no evidence connecting the transaction to Appellant.

As applicable to the present case, a person commits an offense if (1) with intent to fraudulently obtain a benefit, he presents or uses a debit card with knowledge that the card has not been issued to him and is not used with the cardholder's effective consent, or (2) not being the cardholder, and without the effective consent of the cardholder, he possesses a credit or debit card with intent to use it. TEX. PENAL CODE ANN. 32.31(b)(1)(A), (b)(8) (West 2016). In this case, the jury heard testimony that Wright, the card holder, did not give Appellant permission to use her debit card aside from purchasing gas. Within a short time after Wright gave Appellant her card to make the one time gas purchase and dropped him off at campus, the card went missing and Wright's account reflected several unauthorized transactions totaling approximately $500. Although time is not usually a material element of an offense, the jury heard Wright testify that the Wally's transaction occurred at 9:51 p.m. on December 4, the Credit Union transaction occurred at 10:07 p.m. on December 4, and the Right Track transactions occurred at 10:25 p.m. on December 4. *See Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998). As sole judge of the weight and credibility of the witnesses' testimony, the jury was entitled to accept Wright's testimony and resolve any inconsistencies either for or against Appellant. *See Hooper*, 214 S.W.3d at 13.

3

Moreover, Wright identified Appellant as the person depicted on the surveillance recording from Wally's. Although she could not identify the man on the Credit Union's surveillance recording, the recording does not reflect a clear image of the person's face. Detective Cook testified that none of the images from the Credit Union surveillance yielded a positive identification, but that the person in the recordings from both Wally's and the Credit Union appear to be wearing the same or a similar cap. Additionally, although Cook believed Wright's card could have been used by a different person at the Credit Union, he also testified that it is not uncommon for a person to share a card that he procured without authorization. The jury also heard evidence that Wright's calls to Appellant went unanswered, which the jury could consider as evidence of guilt. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (intent may be inferred from circumstantial evidence, such as the defendant's acts, words, and conduct). Furthermore, circumstantial evidence is as probative as direct evidence in establishing Appellant's guilt. *See Hooper*, 214 S.W.3d at 13.

Accordingly, as sole judge of the weight and credibility of the evidence, the jury could reasonably conclude that (1) Appellant used the card without Wright's effective consent at Wally's, and (2) Appellant, or someone acting on his behalf, used the card without Wright's effective consent at the Credit Union. In doing so, the jury could reasonably conclude, beyond a reasonable doubt, that Appellant, who was not the card holder of the Credit Union card and without Wright's effective consent, possessed the debit card with intent to use it or with the intent to fraudulently obtain a benefit, presented or used the debit card. *See* TEX. PENAL CODE ANN. 32.31(b)(1)(A), (b)(8); *see also Brooks*, 323 S.W.3d at 899. Because the evidence is legally sufficient to support Appellant's conviction, we overrule issue six.

**EVIDENTIARY RULINGS**

In issues one through five, Appellant challenges the denial of his objections to testimony from Officer Darty and Wright, the admission of the surveillance videos, and the exclusion of telephone records.

**Standard of Review and Applicable Law**

We review a trial court's evidentiary rulings for abuse of discretion. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). We must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.

4

***Willover v. State***, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will not reverse unless the trial court's ruling falls outside the "zone of reasonable disagreement." ***Oprean***, 201 S.W.3d at 726.

The admission or exclusion of evidence does not result in reversible error unless it affects substantial rights. *See* TEX. R. APP. P. 44.2(b). Substantial rights are not affected when, after examining the record as a whole, the appellate court has fair assurance that the error did not influence the jury, or had but slight effect. ***Motilla v. State***, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). When making this determination, we "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, [and] the character of the alleged error and how it might be considered in connection with other evidence in the case." ***Id***. We may also consider the jury instructions, the State's theory, any defensive theories, closing arguments, voir dire if applicable, and whether the State emphasized the error. ***Id***. at 355-56. Evidence of the defendant's guilt must also be considered when conducting a thorough harm analysis. ***Id***. at 358.

## Hearsay

In issue one, Appellant contends that the trial court abused its discretion by overruling his hearsay objection to the following testimony from Officer Darty:

> State: Did she provide you those amounts – dollar amounts of what was spent that she said was not authorized?
> Officer Darty: Yes.
> …
> State: Can you tell us what kind of dollar amounts we're talking about that she reported --
> Defense Counsel: Objection. Hearsay.
> Trial Court: Any exception, Mr. Putman?
> State: That's information acted upon, Your Honor.
> Trial Court: Overrule the objection on that basis.
> …
> State: What were the dollar amounts?
> Officer Darty: According to my report, she stated that she had five transactions. But she was only able to show me three: $200 at Kelly Community Federal Credit Union. $202.55 was at Wally's Grocery. And $23.23 was withdrawn three times at the Right Track. So I guess that would be five, total.

On appeal, Appellant maintains that Officer Darty's testimony exceeded permissible general description and provided greater detail than reasonably necessary to explain why he chose to proceed with the case.

5

Hearsay is a statement not made by the declarant while testifying at the trial or hearing that is offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Generally, hearsay is inadmissible. *See* TEX. R. EVID. 802. "Although a police officer's testimony may be inadmissible due to hearsay, an officer may describe statements made by others for the purpose of showing why the defendant became a suspect and to explain the events and circumstances leading to the defendant's arrest." **Lacaze v. State,** 346 S.W.3d 113, 121 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

In this case, the trial court could have reasonably concluded that Officer Darty's testimony was not offered for the truth of the matter asserted, but that the times, locations, and amounts of the transactions were necessary to explain why Appellant, as opposed to Wright who owned the card, became a suspect. Even assuming the evidence was erroneously admitted, Wright testified that approximately $500 went missing from her bank account. She also testified that the Wally's transaction occurred at 9:51 p.m., the Credit Union transaction occurred at 10:07 p.m., and the Right Track transactions occurred at 10:25 p.m. Appellant did not object to Wright's testimony. Overruling an objection to the admission of evidence will not result in reversal when, as in this case, the same or similar evidence is admitted without objection, either before or after the complained-of ruling. *See* **Leday v. State**, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *see also* **Flores v. State**, 513 S.W.3d 146, 165 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In fact, during closing arguments, the State reminded the jury, without objection, of the two $200 withdrawals and the three $23 withdrawals, which totaled nearly $500. Under these circumstances, we conclude that any error in the admission of Officer Darty's testimony did not affect Appellant's substantial rights and, consequently, does not result in reversible error. *See* TEX. R. APP. P. 44.2(b); *see also* **Motilla**, 78 S.W.3d at 355. We overrule issue one.

**Surveillance Videos**

In issues two and three, Appellant challenges the admission of the surveillance videos from the Credit Union and Wally's on grounds that the videos were not sufficiently authenticated.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Methods for satisfying this requirement include the testimony of a witness with knowledge, i.e., "[t]estimony that an item is what it is claimed to

6

be," and evidence about a process or system, i.e., "[e]vidence describing a process or system and showing that it produces an accurate result." Tex. R. Evid. 901(b)(1), (9). "Evidence has no relevance if it is not authentically what its proponent claims it to be." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).

Video recordings or motion pictures sought to be used in evidence, such as the recordings in this case, are treated as photographs and are properly authenticated when it can be proved that the images reflect reality and are relevant. *Cain v. State*, 501 S.W.3d 172, 174 (Tex. App.— Texarkana 2016, no pet.). "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda*, 358 S.W.3d at 638. "If the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least within the 'zone of reasonable disagreement,' a reviewing court should not interfere." *Id*. "The trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007).

During the testimony of Amy Ridgeway, the Credit Union's branch manager, the State attempted to introduce surveillance video from the Credit Union. Defense counsel objected on grounds of relevance and improper authentication. She argued that the State failed to lay a "proper authentication or foundation for this particular piece of evidence … [s]he's not either indicated that she has been present to witness the instances from this video, nor does she have any involvement with the machinery that accessed the video." On voir dire, Ridgeway testified that she has access to the videos because they are located on computers and that the office assistant, who also has access to the videos, normally pulls the videos for Ridgeway and is responsible for ensuring that the pictures are clear, the timeframe and date are accurate, and a maintenance log is kept. She testified that the Credit Union has a maintenance agreement with the company that installs the systems, cameras are checked periodically, and she is present when maintenance is performed. According to Ridgeway, the office assistance discovered the camera dates were off by one day so she pulled video from December 3. Ridgeway's testimony indicates that the office assistant had her review the uncut recording before it was cut and sent to the district attorney. The trial court overruled defense counsel's objections and admitted the surveillance video into evidence.

On continued direct-examination, Ridgeway testified that she reviewed the video before sending it to the detective and she reviewed it again the day of her testimony. On cross-examination, she testified that the office assistant checks for clarity, functionality, accuracy regarding the time and date, and places a maintenance service call when needed. She testified that she does not have all the information on the maintenance and repeated that the office assistance maintains the maintenance log.

Subsequently, Mahmoud Abderrahman testified that his father owns Wally's and there are security cameras and an ATM inside the store. He testified that he has access to the video system, which records and saves video for a certain time. He explained that the video is saved for about three months. He testified that a detective came to the store to view the footage from December 4, but Abderrahman was unable to make a copy of the footage because his father installed new software and the system required a code. He explained that the detective filmed the footage with his own camera. Abderrahman reviewed the detective's recording of the footage and testified that it accurately reflected the footage he played for the detective at the store. When the State sought to admit the recording into evidence, defense counsel objected on grounds of irrelevance and improper foundation. She argued that Abderrahman was not present to witness the scene and lacked actual knowledge.

On voir dire, Abderrahman testified he did not know his father installed the new software, but he described the software as a "refresher," meaning the system was the same, but the update included added security features. He explained that repairs to the system are made as needed. He testified that his father normally handled the recordings and is the one who has the knowledge regarding the system. The trial court overruled defense counsel's objections and admitted the recording into evidence.[1]

In reliance on *Page v. State*, 125 S.W.3d 640 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd), Appellant maintains that the recordings in this case were not sufficiently authenticated because (1) Ridgeway did not testify to the security system's functionality and had little involvement in accessing, recording, and producing the video, and the office assistant would have been the proper witness for authenticating the recording, and (2) Abderrahman's father handles the surveillance system, Abderrahman was unfamiliar with the system and its maintenance,

---

[1] Wright and Detective Cook testified after Ridgeway and Abderrahman. During their testimony, the State played the surveillance videos from the Credit Union and Wally's. The defense did not object to the State's playing of the videos.

8

Abderrahman had no knowledge of the system's functionality, and there were no time and date stamps on the video. In *Page*, the appellant argued that the trial court erred by admitting a videotape of the robbery because the loss prevention investigator "could not testify as to the accuracy of the contents of the videotape because he was not present in the store at the time of the robbery." *Page*, 125 S.W.3d at 645, 648. The court of appeals, however, held as follows:

> Here, Bonham testified that the grocery store's "brand-new digital recording system" recorded images from 16 video cameras and automatically saved those images onto a computer hard drive. Bonham further testified that he accessed the digital recording system's hard drive shortly after the robbery and reviewed the recording of the robbery with police officers. Bonham then copied the recording of the robbery onto a videotape and gave it to the officers. Additionally, Bonham reviewed the videotape before trial and testified that it had not been altered in any way. We hold that this evidence was sufficient to enable a reasonable juror to conclude that the videotape was "what the State claimed it to be" and that the trial court did not abuse its discretion in admitting the videotape of the robbery into evidence.

*Id*. at 648-49. In this case, Appellant suggests that the facts are nothing like *Page* and, consequently, the video recordings were not properly authenticated.

The scenario in *Page*, however, does not establish a set of requirements for authentication in every case. *See* TEX. R. EVID. 901(b) (the methods of authentication in Rule 901 are not the exclusive methods for authentication); *see e.g. Randell v. State*, No. 07-11-00493-CR, 2013 WL 309001, at *2 (Tex. App.—Amarillo Jan. 25, 2013, pet. ref'd) (mem. op., not designated for publication) (agreeing with State's argument that *Page* and other cases "do not establish requirements that must be met for admission of every video record[]"). Moreover, the testimony of Ridgeway and Abderrahman represents that of a witness with personal knowledge regarding the content of the surveillance videos. Ridgeway testified that the cameras record constantly, she has access to the cameras via computer, the cameras are checked periodically, the Credit Union has an agreement with a company that maintains the cameras, and the surveillance dates were off by one day. That the office assistant maintains the maintenance log and checks to ensure clarity of images and accuracy of times and dates does not render Ridgeway an improper witness to testify as to authentication. Ridgeway testified that, even though the office assistant pulled the video and sent it to the State, she viewed the videos from the night of the offense and the videos tendered to the detective are accurate representations of the Credit Union's surveillance from the night of the offense.

9

Abderrahman likewise testified that the video from Wally's accurately reflects the video that he played for the detective. He explained that the cameras cover different angles, he has access to the system and the ability to use it to show footage to law enforcement, the system saves the footage for a certain period of time, and the system is repaired as needed. His testimony as to authentication is not insufficient merely because he was unable to download the footage, the system had been updated with new software, or his father normally handles the system. Moreover, neither he nor Ridgeway offered testimony establishing that the recordings had been tampered with or altered.

Accordingly, based on the testimony presented to the trial court, a conclusion that the State supplied facts sufficient to support a reasonable jury determination that the surveillance recordings are authentic is at least within the zone of reasonable disagreement. *See **Tienda***, 358 S.W.3d at 638. Because the trial court could reasonably conclude that a reasonable juror could find that the challenged recordings have been authenticated or identified, we conclude that the trial court did not abuse its discretion by admitting the recordings into evidence. *See **id**.*; *see also **Druery***, 225 S.W.3d at 502. We overrule issues two and three.

## Leading Questions

In issue four, Appellant argues that the trial court abused its discretion by overruling his objection to leading questions posed during Wright's testimony. Specifically, Appellant's counsel objected to the following as leading questions:

> State: Did the Defendant know your birthday?
> Wright: Yes.
> State: Did you ever enter your pin number when you had made purchases, before, in front of him?
> Wright: Yes.
> Defense counsel: Objection. Leading the witness.
> Trial court: Overruled.
> …
> State: Do you know if the other times you had put in your pin number, if the Defendant was ever in a position to see you putting it in?
> Defense counsel: Objection. Leading the witness.
> Trial court: Overruled.
> Wright: Yes. I wasn't guarding it. I didn't think I needed to.

On appeal, Appellant maintains that the State "practically testified on behalf of this witness, and only required her to answer 'yes,' or 'no.'"

Assuming, without deciding, that the trial court erred by overruling Appellant's leading objections, we conclude that any error in admission of the testimony was harmless. Wright

subsequently testified, without objection, that she used her pin in front of Appellant during times when they stopped at the gas station for items like soda or candy. As previously stated, the erroneous admission of evidence will not result in reversal when the same or similar evidence is admitted without objection. *See **Leday***, 983 S.W.2d at 718; *see also **Flores***, 513 S.W.3d at 165. Accordingly, we overrule issue four.

## Exclusion of Telephone Records

In issue five, Appellant maintains that the trial court erroneously excluded evidence of his telephone records. During cross-examination, Appellant asked Wright if she and Appellant texted after she dropped him off at the campus. Wright replied, "No." Appellant subsequently sought to introduce telephone records into evidence. The record suggests that Appellant wanted to use the records to show that he and Wright texted after she discovered the missing funds. The State objected on grounds of improper predicate and authentication, and hearsay. The following exchange occurred:

> Trial Court: You're seeking to use it as a business record?
> Defense Counsel: Yes, Your Honor.
> Trial Court: Doesn't the rule require you to file that so many days in advance?
> State: I think it's 14 days, Your Honor, but I can't recall. At least I believe that's the rule, if you want to offer it without a sponsored witness.
> Defense Counsel: Say it again.
> State: I believe that's the time requirement if you want to offer it without a sponsoring custodian of records.
> Trial Court: The timeframe is actually a different – I'm not seeing it at the moment. So, State, if y'all have that handy, y'all can tell me which rule it is.
> Looks like it's 902.10.
> State: Yes, sir.
> Trial Court: "Must provide at least 14 days before trial."
> All right. Court sustains the objection to [Exhibit] 12, since there's -- well, again, just so the record's complete, you didn't file it; you didn't give your opponent notice of it, true?
> Defense Counsel: Yes, sir.
> Trial Court: Court sustains the objection to Number 12.

On appeal, Appellant argues that the State "never once disputed the fact that [it] had received a copy of these records and the attached affidavit at least 14 days prior to trial" and "never complained to not having viewed said records within the proper time as specified by the rules of evidence." He contends that "the attorney for the state complained that said records had not been filed at least 14 days prior to the date of the trial…[t]his was the chief complaint by the state as to the admissibility of the same."

A business record accompanied by an affidavit is considered self-authenticating. *See* TEX. R. EVID. 902(10). However, "[t]he proponent of a record must serve the record and the accompanying affidavit on each other party to the case at least 14 days before trial." TEX. R. EVID. 902(10)(A). The trial court's questioning of defense counsel indicates that the trial court believed service to be an issue. Defense counsel's response to whether the defense served the documents and requisite affidavit on the State indicates that the defense did not comply with Rule 902(10)'s service requirements. On appeal, Appellant points to no place in the record to demonstrate that the excluded exhibit and business records affidavit was served on the State at least fourteen days before trial. *See* TEX. R. APP. P. 38.1(i) (an appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record[]"). Under these circumstances, we cannot say that the trial court abused its discretion by excluding the telephone records. *See **Oprean***, 201 S.W.3d at 726. We overrule issue five.

<u>**DISPOSITION**</u>

Having overruled Appellant's six issues, we ***affirm*** the trial court's judgment.

<u>**BRIAN HOYLE**</u>
Justice

Opinion delivered March 21, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 21, 2018**

**NO. 12-17-00019-CR**

**TEVIN BREON DILLARD,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 007-0815-16)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*