**AFFIRMED and Opinion Filed June 20, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00174-CR

**LANCE MICHAEL WILLIAMS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1676144-Q**

## MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Whitehill

A jury convicted appellant of capital murder for shooting Rolland Jackson during a robbery, and the court assessed punishment at life imprisonment. In four issues appellant argues that: (i) the evidence is insufficient to support his conviction because the evidence does not prove (a) that he committed the offense or (b) that the murder was committed while in the course of committing a robbery; (ii) the trial court erroneously admitted evidence that he was known to carry a revolver; and (iii) the trial court erroneously admitted evidence of a prior conviction. As discussed below, we affirm the trial court's judgment.

## I. Background

Jackson and appellant were regular customers at Jeremy's food store. On August 3, 2016, Jackson and appellant were outside of Jeremy's when appellant shot Jackson three times and took his wallet.

Ivan Maldonado, another Jeremy's regular, witnessed the crime. Semetric Baker, a prostitute who works the Jeremy's area and counted Jackson among her clients, was also present when Jackson was shot.

The autopsy showed that Jackson was shot in the neck, chest, and shoulder, and the medical examiner concluded that Jackson died from these gunshot wounds. A ".38 caliber projectile" bullet was recovered from Jackson's body (the two other bullets exited the body). The medical examiner opined that the gun used to kill Jackson was "most likely a revolver."

A jury convicted appellant of capital murder and the court assessed punishment at life imprisonment. This appeal followed.

## II. Analysis

### A. First and Second Issues: Is the evidence sufficient to support appellant's conviction?

#### 1. Standard of Review and Applicable Law

We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

This standard gives full play to the factfinder's responsibility to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 319; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). And the factfinder is

the sole judge of the evidence's weight and credibility. *See* TEX. CODE CRIM. PROC. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder's. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in the verdict's favor and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

A person commits murder if he intentionally causes the death of an individual. *See* TEX. PENAL CODE §19.02(b)(1). The offense is capital murder if, among other things, the murder is committed in the course of committing or attempting to commit a robbery. *See* TEX. PENAL CODE §19.03(a)(2).[1] "In the course of committing" means conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense. *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989).

The State must prove a nexus between the murder and the theft—that the murder occurred to facilitate the taking of property. *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986). Evidence that property was taken immediately after a murder will support an inference that the

---

[1] A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of property, he intentionally, knowingly, or recklessly causes bodily injury to another or knowingly threatens or places another in fear of imminent bodily injury or death. *See* TEX. PENAL CODE § 29.02 (a).

murder occurred during the course of a robbery. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

### 2. Evidence that appellant robbed and killed Jackson

Maldonado testified that he saw appellant and Jackson arguing, heard gunshots, and saw Jackson fall over. Then, appellant flipped Jackson over, took his wallet, and ran away. Appellant ran in front of Maldonado's truck as he fled. Maldonado recognized appellant because they were both Jeremy's regulars.

Maldonado called 911 to report a shooting and a robbery. During that call, he said he knew who the shooter was and described that person as wearing a white t-shirt, shorts, and a "do-rag."

Later, Maldonado gave a statement to the police and identified appellant in a photo line-up.

At trial, Maldonado acknowledged that his police statement was incorrect because he omitted mention of the gun and was vague about something being removed from Jackson's pockets. But he told the jury that he had seen the gun and saw appellant take Jackson's wallet. Maldonado explained that he did not include this information in his statement because he was "scared to get more involved for [his] safety." Maldonado thought that the gun he saw was a revolver.

Baker told the jury that she was at Jeremy's when appellant arrived on the day of the shooting. Appellant was wearing a black shirt on his head "tied up in the back." Appellant approached Jackson and the two went to the side of the building where there was "some kind of disagreement." Then, Jackson came back around the corner and went into the store.

Baker went into the store and asked Jackson if he wanted to "go on a date." Jackson seemed "pissed off a little bit," but agreed. Jackson told her to get what she needed and they would then go to the car.

–4–

Baker and Jackson walked back to Jackson's car and appellant was standing there waiting. Appellant asked Jackson, "You got what you owe me"? and Jackson replied, "What? I don't owe you nothin'." When appellant persisted Jackson repeated, "I'm not givin' you nothin'."

Baker got out of the car to get away from the argument and told Jackson to call her when he was ready. Another prostitute, Lynda Mead, walked up. Mead and Baker were chatting when Jackson told them they needed to leave. Mead and Baker turned and had taken "maybe 3, 4 steps" when Baker heard "two pops." She ran and didn't look back.

Baker later learned that Jackson had been shot. According to Baker, appellant carried a "small revolver" "all the time."

Appellant's sufficiency arguments are premised on the contention that neither Baker nor Maldonado are credible witnesses. But the jury assesses the credibility of witnesses and we do not reweigh the evidence or substitute our own judgment. *See Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018).

Viewing the evidence in a light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant murdered Jackson during the commission of a robbery. Appellant's first two issues are resolved against him.

**B.     Third Issue: Did the trial court erroneously admit evidence that appellant was known to carry a revolver?**

Appellant's third issue argues that Baker should not have been allowed to testify that appellant was known to carry a revolver. According to appellant, the evidence is irrelevant under Rule 401, inadmissible under Rule 404(b), and should have been excluded under Rule 403. *See* TEX. R. EVID. 401, 403, 404(b).[2]

---

[2] Appellant also argues that Baker's testimony constituted evidence of an extraneous offense, but carrying a gun does not show *modus operandi* for the commission of murder. This argument, however, was not raised in the court below. *See* TEX. R. APP. P. 38.1.

**1.      Standard of Review and Applicable Law**

We review a trial court's decision to admit evidence for an abuse of discretion. *Davis v. State,* 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). A decision is an abuse of discretion when it falls outside the zone of reasonable disagreement. *Id.*

"Generally, all relevant evidence is admissible." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). Evidence is relevant if: (i) it has a tendency to make a fact more or less probable than it would be without the evidence, and (ii) the fact is of consequence in determining the action. TEX. R. EVID. 401. When determining whether evidence is relevant, courts must examine the purpose for which the evidence is introduced. *Layton*, 280 S.W.3d at 240. "It is critical that there is a direct or logical connection between the actual evidence and he proposition sought to be proved." *Id.*

Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012). In deciding whether to admit evidence in light of a Rule 403 objection, a trial court must conduct a balancing test. On one end of the scale, the court must weigh (i) the inherent probative value of the proffered evidence with (ii) the State's need for the evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). On the other end, the court weighs (iii) the evidence's tendency to suggest a decision on an improper basis, (iv) the evidence's tendency to confuse or distract the jury from the main issues, (iv) the evidence's tendency to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (vi) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Id.* The balance is always slanted toward admission of relevant evidence because Rule 403 carries

a presumption that relevant evidence will generally be more probative than problematic. *De La Paz v. State*, 279 S.W.3d 336, 343 & n. 17 (Tex. Crim. App. 2009).

Rule 404 (b) provides that evidence of a crime, wrong, or other act is not admissible to prove a person's character or conformity therewith. TEX. R. EVID. 404 (b)(1). But this evidence may be admissible for other purposes, such as proving motive, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. TEX. R. EVID. 404 (b)(2). Nonetheless, evidence that is admissible under Rule 404 (b) may still be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID 403.

### 2. Was the evidence erroneously admitted?

First, we consider whether the evidence that appellant carried a revolver was relevant and admissible under Rule 404(b). The State's expert opined that the slippage marks on the rounds taken from Jackson's body suggest that he was shot with a revolver. Maldonado testified that he saw the gun when appellant shot Jackson and he thought it was a revolver. Thus, that appellant carried a revolver was relevant because it tends to show that appellant shot Jackson.

Likewise, the evidence was admissible under Rule 404(b) to show appellant's identity as the shooter. The defensive theory in this case was that the shooter could have been an unidentified man with dreadlocks shown on the Jeremy's security footage. Because identity was at issue, evidence that appellant carried a gun like the one used in the offense was relevant to his identity as the robber and shooter. *See Page v. State*, 125 S.W.3d 640, 649 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

Having determined that the evidence was relevant and admissible under Rule 404(b), we consider whether the evidence should nonetheless have been excluded under Rule 403.

Regarding the first factor, the inherent probative force of the evidence, we have already explained that the evidence was relevant to rebut the defensive theory that someone other than appellant was the shooter.

As to the second factor, the State had a modest need for the evidence. Although the State had an eyewitness who saw appellant shoot Jackson with what he believed was a revolver, evidence that appellant carried such a gun provided an additional nexus between appellant and the offense. Thus, the second factor favors admitting the evidence.

Considering the third factor, the evidence had limited potential to cause unfair prejudice. Unfair prejudice means a tendency to tempt the jury to find guilt on grounds apart from proof of the offense. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Evidence is prejudicial in this context only when it tends to have some adverse effect on a defendant beyond tending to prove the fact or issue that justified its admission into evidence. *See Montgomery v. State*, 810 S.W.3d 372, 378 (Tex. Crim. App. 1990). In this instance, that appellant carried a gun would not tempt a rational jury to find him guilty of murder. Thus, this factor also weighs in favor of admission.

The remaining factors add no weight to the scales. We do not perceive any way in which the evidence would have confused or distracted the jury, and the evidence was not such that it might have been given undue weight.

Finally, as to the sixth factor, the trial court could reasonably have concluded that the evidence was not cumulative and that its presentation would not consume an inordinate amount of time. In fact, the evidence consisted of less than half of a page of trial testimony.

In light of the foregoing, we conclude the trial court's balancing the Rule 403 factors in favor of admitting the evidence was not outside the zone of reasonable disagreement. We resolve appellant's third issue against him.

**C.**     **Fourth Issue: Was appellant harmed by admitting his prior conviction into evidence?**

Appellant's fourth issue argues that he was harmed by the erroneous admission of his extraneous conviction. The record, however, does not support this conclusion.

Baker testified as an eyewitness for the State. On cross-examination, appellant elicited testimony that Baker had never seen appellant shoot anyone or even shoot a gun. Baker said appellant had pointed a gun at her, but she wasn't scared. Defense counsel then asked, "[B]ecause quite honestly, you don't think he's the type of guy that would shoot somebody"? Baker replied, "Not me, anyway."

The State, however, did not seek to correct any false impression from Baker's testimony by cross-examining Baker. *See Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002) (false impression must be corrected through cross-examination of witness who left the false impression, not by calling another witness). Instead, the State used Investigator Doty's testimony to introduce appellant's prior Louisiana conviction for intentionally or negligently discharging a firearm.[3]

The State admits that the trial court "likely erred" in admitting the evidence through Doty. Assuming without deciding that there was error, we conclude that appellant did not suffer harm.

For non-constitutional error, any error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2 (b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We do not reverse for non-constitutional error if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury or had but a slight effect. *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005).

---

[3] Doty, an investigator with the D.A.'s office, testified that appellant's fingerprints matched those on the 2009 Louisiana judgment of conviction.

In assessing the likelihood that the jury's decision was adversely affected by the error we consider everything in the record including: (i) any testimony or physical evidence admitted for the jury's consideration, (ii) the nature of the evidence supporting the verdict, (iii) the character of the alleged error, and (iv) how the error might be considered in connection with other evidence in the case. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). We may also consider the jury's instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id*. at 518-19.

Here, the evidence against appellant was strong and the complained-of evidence was not likely to detract the jury's consideration of the issue before it—whether appellant shot and robbed Jackson. Maldonado testified that he saw appellant shoot Jackson, and Baker described the argument over money between appellant and Jackson immediately before Jackson was shot. Jackson was shot with a revolver, and appellant was known to carry such a gun.

In addition, the State introduced recordings of phone calls appellant made while incarcerated. During one call, appellant complained that someone was "trying to rat on him." In another call, he said that "Ivan" [Maldonado] was "getting in his business."

Although the State mentioned the prior conviction in closing argument, it did so only once. Specifically, the State argued:

> You know he's exactly this - - the type of person who would pull out a gun, fire it, while he's in a motor vehicle when he got that prior in from– from that felony prior from Louisiana, and you also know that he's guilty of capital murder here on Dallas County.

Of thirty-five pages of closing argument, this brief reference does not constitute undue emphasis.

Moreover, the jury was instructed to only consider other offenses "in determining the intent and motive of the defendant, if any, alleged in the indictment in this case, and for no other purpose." Absent contrary evidence, we presume the jury followed the instructions given. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

–10–

Having reviewed the entire record, we conclude that any error in admitting the evidence did not have a substantial or injurious effect on the jury's verdict and did not affect appellant's substantial rights.  Thus, we disregard the error.  *See* TEX. R. APP. P. 44.2(b).  We resolve appellant's fourth issue against him.

### III.  CONCLUSION

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
180174F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LANCE MICHAEL WILLIAMS,
Appellant

No. 05-18-00174-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1676144-Q.
Opinion delivered by Justice Whitehill.
Justices Partida-Kipness and Pedersen, III
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 20, 2019